**Chad Jamie GULBERTSON, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A13–0901.**

Supreme Court of Minnesota.

March 5, 2014.

Cathryn Middlebrook, Chief Appellate Public Defender, Stephanie A. Karri, Special Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

Lori Swanson, Attorney General, Matthew Frank, Assistant Attorney General, Saint Paul, Minnesota.

Craig S. Nelson, Freeborn County Attorney, Albert Lea, Minnesota, for respondent.

## OPINION

ANDERSON, Justice.

Chad Jamie Gulbertson appeals the denial of his petition for postconviction relief, an action he brought following his convictions for murder in connection with the 2009 death of his former girlfriend, Jody Morrow. In his petition for postconviction relief, Gulbertson challenged his conviction for first-degree murder while committing domestic abuse and with a past pattern of abuse, asserting that there was insufficient evidence to support the jury's finding that he had engaged in a past pattern of domestic abuse, that the district court erred in its jury instructions on a past pattern of domestic abuse, and that the district court committed plain error by admitting evidence related to orders for protection (OFPs) sought by Morrow against Gulbertson. After an evidentiary hearing, the postconviction court issued an order denying relief. Gulbertson appealed, and we now affirm.

### I.

Prior to Morrow's death on June 21, 2009, Gulbertson and Morrow were involved in a romantic relationship for several years and lived together in Morrow's trailer until Gulbertson moved out in May 2009. Morrow and Gulbertson had a volatile relationship, and several witnesses testified that they frequently fought. H.B. reported seeing Gulbertson shove Morrow, hearing him tell Morrow that he was going to get her, and hearing Gulbertson threaten to beat Morrow on multiple occasions while H.B. was talking to Morrow on the phone. H.B. also reported that she heard Gulbertson threaten to "cut [Morrow's] head off with a sword and then take care of any witnesses." L.S. testified that she heard Gulbertson tell Morrow that he would kill her if she dated anyone else, and that she had seen bruises on Morrow's wrist and neck. J.L. heard Gulbertson threaten to kill Morrow and heard Morrow shout, "[t]hat's the last time you're going to kick me" at Gulbertson during a fight.

Both parties had called the police during arguments and made allegations of domestic abuse against one another. Morrow's social worker stated, "one would hit the other or the other one would hit, you know, it was just an ongoing kind of thing." R.M. testified that "[Morrow] straight up hit [Gulbertson], you know, they kinda hit each other, push each other around, but, I mean, it was an equal match." Morrow twice sought an OFP against Gulbertson. The first time she applied for an OFP was in September 2008, but, after an initial exparte order, the matter was dismissed when Morrow failed to appear for the hearing. Morrow applied for a second OFP in May 2009, and on June 1, 2009, both Morrow and Gulbertson attended an evidentiary hearing in connection with the second OFP. Morrow testified and explained the contents of her application, and Gulbertson, who was not represented by counsel, declined to cross-examine her. Gulbertson also testified. The district court considered the evidence and issued an OFP in favor of Morrow, finding that "[a]cts of domestic abuse have occurred."

On June 20, 2009, Gulbertson told an acquaintance that he intended to go to Morrow's home to retrieve some of his belongings. The next morning Gulbertson called his parents and asked them to pick him up. While Gulbertson was at his parents' house, Gulbertson's father noticed Gulbertson crying on the couch. Gulbertson told his father that he thought he had killed Morrow, at which point Gulbertson's father brought him to the Albert Lea Law Enforcement Center. The arresting officer at the Law Enforcement Center interviewed Gulbertson, during which Gulbert-

son stated that he had killed his best friend. Officers went to Morrow's home and, after forcing entry into her trailer, found Morrow's body lying on the floor next to her wheelchair. Morrow had sustained several blunt force injuries to her head from a hammer and stab wounds to her neck.

Gulbertson was convicted of murder in the first degree while committing domestic abuse and with a past pattern of domestic abuse.[1] Gulbertson filed a petition for postconviction relief in the Freeborn County District Court on March 28, 2012, and an amended petition on August 13, 2012. Gulbertson's petitions argued that there was insufficient evidence to establish a past pattern of domestic abuse beyond a reasonable doubt, that the court erred when it failed to define domestic abuse as it relates to the third element of a domestic abuse murder in the jury instructions, that the court erred when it failed to instruct the jury that it must find beyond a reasonable doubt that Gulbertson had committed a "minimum amount of acts" that constituted domestic abuse, and that the court erred in admitting evidence in connection with the OFPs sought by Morrow. The postconviction court held a hearing on Gulbertson's petition for postconviction re-

lief on January 23, 2013, and subsequently denied the petition, concluding that the State had proven a past pattern of domestic abuse beyond a reasonable doubt, that the jury instructions were not erroneous, and that the admitted evidence from the OFP proceedings did not violate Gulbertson's Confrontation Clause rights.[2] Gulbertson now appeals.

## II.

■■■ We review a denial of a petition for postconviction relief for an abuse of discretion. *Davis v. State*, 784 N.W.2d 387, 390 (Minn.2010). There is an abuse of discretion when the postconviction court's "decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 819 N.W.2d 162, 167 (Minn.2012) (citation omitted) (internal quotation marks omitted). We review a postconviction court's factual determinations under a clearly erroneous standard, but review the postconviction court's legal conclusions de novo. *Id.*

■■■ Gulbertson first argues that there is insufficient evidence to support the jury's finding that he had engaged in a past pattern of domestic abuse against Morrow.[3] When reviewing a claim of in-

---

1. Gulbertson was also convicted of murder in the second degree while intending to effect the death of another and murder in the second degree while restrained by an order for protection.

2. The postconviction court also concluded that the instructions on the minimum number of acts required to establish a pattern were not erroneous. Gulbertson does not appeal this conclusion.

3. In his pro se supplemental brief, Gulbertson also makes a general argument that the evidence supporting his convictions, including evidence that he was involved in the murder of Morrow, was insufficient. Gulbertson asserts his innocence and implicates J.L. and S.N. in Morrow's murder. This argument is

without merit. At trial, the State presented evidence that the morning after Morrow's death, Gulbertson presented himself to Albert Lea law enforcement and asked them to handcuff him. In a recorded conversation that was played for the jury, Gulbertson told police that he had killed his best friend and that he had gone to Morrow's trailer alone around 1:00 that morning. Gulbertson stated in that conversation that he had an argument with Morrow at her trailer, during which he grabbed a hammer, and that he might have killed her. Viewed in the light most favorable to the verdict, these statements and the corroborating physical evidence were sufficient to allow the jury to reasonably conclude, beyond a reasonable doubt, that Gulbertson, not J.L. or S.N., killed Morrow.

sufficient evidence, our inquiry is limited to whether the fact-finder could have reasonably concluded that the defendant was guilty beyond a reasonable doubt. *State v. Welch,* 675 N.W.2d 615, 619 (Minn.2004). We view "the evidence in the light most favorable to the verdict and assume[ ] that the fact finder believed the state's witnesses and disbelieved any contrary evidence." *Id.*

Minnesota Statutes § 609.185(a)(6) (2012) provides that anyone who "causes the death of a human being while committing domestic abuse, when the perpetrator has engaged in a past pattern of domestic abuse upon the victim or upon another family or household member and the death occurs under circumstances manifesting an extreme indifference to human life," is guilty of murder in the first degree. Domestic abuse occurs when someone commits assault in the first degree, assault in the second degree, assault in the third degree, assault in the fifth degree,[4] domestic assault, criminal sexual conduct in the first degree, criminal sexual conduct in the second degree, criminal sexual conduct in the third degree, or criminal sexual conduct in the fourth degree, or makes terroristic threats,[5] if the victim is a family or household member.[6] Minn.Stat. § 609.185(c) (2012).

■ A conviction under Minn.Stat. § 609.185(a)(6) requires not only that the defendant caused the death of the victim while committing domestic abuse, but also that domestic abuse had occurred previously to the extent that it was a "past pattern." A past pattern of domestic abuse "suggests a regular way of acting by committing acts of domestic abuse." *State v. Robinson,* 539 N.W.2d 231, 237 (Minn. 1995). Section 609.185(a)(6) does not specify the minimum number of incidents required to find a pattern, but a lone act of domestic abuse cannot constitute a pattern. *State v. Sanchez–Diaz,* 683 N.W.2d 824, 832 (Minn.2004).

■ Gulbertson argues that the State has proven only one act of domestic violence through the 2009 OFP testimony, and that this is insufficient to show a past pattern of abuse. But this is not an accurate characterization of the State's evidence, as the State submitted direct evidence of multiple acts of domestic abuse occurring over the course of several years. The State's evidence includes at least three witnesses (H.B., L.S., and J.L.) who heard Gulbertson threaten Morrow with bodily harm or death on different occasions, multiple incidents in which Morrow reported receiving physical injuries from Gulbertson, and witnesses (H.B. and R.M.) who saw Gulbertson push or hit Morrow.

■ Gulbertson argues that the witnesses are not credible due to demonstrated memory lapses or the inability to properly hear the exchanges between him and Morrow because the witnesses were hearing the arguments over the phone. But Gulbertson's arguments would require us

---

**4.** Assault in the fifth degree occurs when someone "(1) commits an act with intent to cause fear in another of immediate bodily harm or death; or (2) intentionally inflicts or attempts to inflict bodily harm upon another." Minn.Stat. § 609.224, subd. 1 (2012).

**5.** Terroristic threats include threatening, "directly or indirectly, to commit any crime of violence with purpose to terrorize another." Minn.Stat. § 609.713, subd. 1 (2012).

**6.** Because a family or household member includes "persons who are presently residing together or who have resided together in the past" and "persons involved in a significant romantic or sexual relationship," Minn.Stat. § 518B.01, subd. 2 (2012), Morrow was Gulbertson's family or household member under the statute.

to reevaluate the credibility determinations made by the jury, and we have held that determinations of weight and credibility are within the province of the jury. *State v. Flores*, 595 N.W.2d 860, 867 (Minn.1999). Furthermore, Gulbertson's arguments ignore our previous holding that we do "not always require[ ] that witnesses *see* an incident of domestic abuse for their testimony to support a pattern of domestic abuse." *State v. Clark*, 739 N.W.2d 412, 420 (Minn.2007). The jury in this case was properly informed of the circumstances in which the witnesses heard the events and was able to assess the impact of such circumstances, such as difficulty hearing through a phone, as part of their determination of credibility and assignment of weight to the evidence.

Viewing the evidence in the light most favorable to the verdict and assuming that the jury believed the evidence supporting the verdict and disbelieved contrary evidence, we hold that the jury could reasonably conclude that these actions constituted domestic abuse because they involve the infliction or attempted infliction of bodily harm, actions committed with intent to cause fear in another of immediate bodily harm or death, or threats of committing a crime of violence with the purpose of terrorizing another. Because the State submitted evidence of multiple incidents that could reasonably be considered domestic abuse and the incidents reflected a regular way of acting, the evidence sufficiently supports the jury's conclusion that there was a past pattern of domestic abuse, and this conclusion is entitled to our deference.

■ Gulbertson also argues that the postconviction court ignored evidence of Morrow's abuse against him in assessing whether there was sufficient evidence to establish that Gulbertson had engaged in a past pattern of domestic abuse. At trial, evidence was submitted that Morrow

had hit Gulbertson or caused other minor injuries to him over the course of the relationship. We have previously held that finding a past pattern of domestic abuse requires fact-finders to look at "the nature of appellant and victim's relationship as a whole." *Sanchez–Diaz*, 683 N.W.2d at 832. Gulbertson argues that by failing to consider the existence of mutual abuse, the postconviction court ignored the nature of the relationship as a whole. Although consideration of the actions of both partners may be relevant in determining whether the defendant's actions in a specific incident were in self-defense, the mere fact that both partners committed separate acts of abuse against each other does not reduce the culpability of either party. Gulbertson has not submitted any evidence that his actions were performed in self-defense, but instead argues that "the fighting was mutual." Gulbertson's argument, which essentially claims that bad conduct by one party cancels bad conduct by another party, is therefore misguided.

■ The interpretation proposed by Gulbertson would create an exception to Minn.Stat. § 609.185(a)(6) for mutual abuse that does not exist. But Gulbertson does not argue that the statute is ambiguous, and when a statute is unambiguous, we rely on the plain meaning. *State v. Asfeld*, 662 N.W.2d 534, 541 (Minn.2003). The plain language of the statute requires evaluation of culpability based on *Gulbertson's* actions of domestic abuse, and any separate acts of abuse by Morrow are irrelevant to that evaluation. The postconviction court therefore did not err by failing to consider any alleged abuse by Morrow when evaluating whether there was sufficient evidence to establish that Gulbertson had engaged in a past pattern of domestic abuse.

## III.

Gulbertson next argues that the jury instructions were erroneous because the district court did not restate the definition of domestic abuse when it instructed the jury on a past pattern of domestic abuse. Gulbertson did not object to the jury instructions during the trial, and a failure to object to jury instructions precludes review unless the appellant can show that there was a plain error affecting substantial rights. *State v. Ramey*, 721 N.W.2d 294, 297 (Minn.2006); *see also* Minn. R.Crim. P. 26.03, subd. 19(4)(a) ("No party may claim error for any instruction not objected to before deliberation.").

Plain error review requires that we reverse trial error if there is (1) error; (2) that is plain; and (3) the error affected substantial rights. *State v. Hill*, 801 N.W.2d 646, 654 (Minn.2011). A plain error is one that is clear or obvious, *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002), and we have noted that such an error usually "contravenes case law, a rule, or a standard of conduct." *Ramey*, 721 N.W.2d at 302. If all three prongs are met, we then assess whether the error should be addressed to ensure the fairness and the integrity of the judicial proceedings. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998).

Jury instructions "must fairly and adequately explain the law of the case." *State v. Carridine*, 812 N.W.2d 130, 142 (Minn.2012). The instructions must define the crime charged and not materially misstate the law. *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn.2001). District courts have considerable latitude in the selection of the exact language of the instructions, *State v. Gray*, 456 N.W.2d 251, 258 (Minn.1990), and instructions will be reviewed as a whole to determine if they fairly and adequately explain the law, *State v. Flores*, 418 N.W.2d 150, 155 (Minn.

1988). We "will not reverse where jury instructions overall fairly and correctly state the applicable law." *Stewart v. Koenig*, 783 N.W.2d 164, 166 (Minn.2010) (citation omitted) (internal quotation marks omitted).

The jury instructions in this case included a preliminary instruction that jurors "must consider these instructions as a whole and regard each instruction in the light of all the others." The district court also stated, "[d]uring these instructions I may have defined certain words and phrases. If so, you are to use those definitions in your deliberations. If I have not defined a word or phrase you should apply the common, ordinary meaning of that word or phrase." The jury instructions on first degree murder while committing domestic abuse stated in relevant part as follows:

> The elements of murder in the first degree while committing domestic abuse are: First, the death of Jody Lee Morrow must be proven. Second, the death of Jody Lee Morrow occurred while the defendant was committing domestic abuse. Minnesota Statutes define domestic abuse as including assault in the first degree, assault in the second degree, assault in the third degree, assault in the fifth degree, domestic assault, and or terroristic threats committed against a family or household member. [Court defines each of the assault crimes and terroristic threats, as well as family or household member.] Third, the defendant engaged in a past pattern of domestic abuse against Jody Lee Morrow. A past pattern consists of prior acts of domestic abuse which form a reliable sample of observable traits or acts which characterize an individual's behavior. More than one prior act of domestic abuse is required for there to be a past pattern.

After listing the fourth and fifth elements of the crime, the court reiterated, "[y]ou must use the definitions given above when considering this offense." Gulbertson argues that these instructions were incomplete because by failing to define domestic abuse as part of the third element—which is a "past pattern of domestic abuse"—the instructions omitted part of the definition of the crime charged.

◼ The instructions were adequate to inform the jury of the elements of the crime, including the meaning of domestic abuse. Viewing the jury instructions as a whole, "domestic abuse" was defined shortly before the district court gave instructions on the element of a past pattern of abuse. Prior to defining domestic abuse, the district court gave a broad instruction that the jury must use the definitions provided for defined words, and reiterated immediately after listing the elements of the crime that jurors "must use the definitions given above when considering this offense." There was nothing in the instructions to lead the jury to believe that domestic abuse in the context of a past pattern was an exception to this guidance. "We presume that juries follow instructions given by the court." *State v. Matthews*, 779 N.W.2d 543, 550 (Minn.2010). Therefore, because the jury instructions fairly and adequately stated the law and included all required elements, we conclude that the district court did not err in its jury instructions on a past pattern of domestic abuse.[7]

### IV.

◼ Gulbertson next argues that the admission of evidence related to OFPs obtained by Morrow against Gulbertson in 2008 and 2009 violated his Confrontation Clause rights under the Sixth Amendment. Gulbertson challenges the admission of Morrow's OFP petitions and accompanying testimony from the 2009 OFP hearing, as well as the admission of the actual 2008 exparte OFP and 2009 OFP. Gulbertson argues that he did not have an adequate opportunity to cross-examine Morrow during the OFP hearing because he was not present when she wrote the affidavits, did not have representation at the 2009 OFP hearing, and did not know that Morrow's statements would later be used for a murder trial. He therefore argues that he was denied "the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. Gulbertson also argues that the admission of the OFP evidence, including the admission of the OFPs themselves, was unduly prejudicial.

◼ Gulbertson did not object to the admission of this evidence at trial, and therefore plain error review applies to this issue on appeal. *See State v. Martin*, 695 N.W.2d 578, 582–83 (Minn.2005) (applying the plain error doctrine to a Confrontation Clause issue). Again, plain error review requires that there is (1) error; (2) that is plain; and (3) the error affected substantial rights. *State v. Hill*, 801 N.W.2d at 646, 654 (Minn.2011). If these three prongs are satisfied, we then assess whether the error should be addressed to ensure

---

7. Gulbertson also argues that the failure to object to the jury instructions gives rise to an ineffective assistance of counsel claim. Because the jury instructions were adequate, this claim also fails. Under *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), counsel's performance must have fallen below the standard of objective reasonableness in order for a claim of ineffective assistance to succeed, and it was not unreasonable for counsel to fail to object to proper jury instructions, *see State ex rel. Fruhrman v. Tahash*, 275 Minn. 242, 244–45, 146 N.W.2d 174, 176 (1966) ("[N]o inadequacy can be attributed to counsel for failing to make a motion which should have been denied had it been made.").

fairness and the integrity of the judicial proceedings. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998). In *Griller*, we held that the defendant bears the burden of persuasion on the third prong of the plain error test. *Id.* at 741. Thus the defendant has the "heavy burden" to show that the error was prejudicial and affected the outcome of the case. *Id.*

Gulbertson has not met his burden of showing that the admission of the evidence connected to the OFPs affected the outcome of the case. We note that the vast majority of the content in the challenged evidence was also presented in other forms at the trial. For example, in her OFP affidavits and testimony, Morrow discussed incidents in July and September 2008 and May 2009 in which Gulbertson threatened or injured her. But Morrow also reported these incidents to the police immediately after they occurred, and the testimony at trial from the responding officers, which largely reiterated the contents of Morrow's affidavits, has not been challenged. Because the evidence is cumulative and largely repeated by other sources, we conclude that the admission of the evidence connected to the OFPs did not have any significant impact on the verdict.[8] Because Gulbertson's substantial rights were not affected, his arguments fail under plain error review and thus we do not need to address whether the evidence was admitted in error.

## V.

Because we conclude that there was sufficient evidence to support the jury's finding of a past pattern of domestic abuse, that there was no error in the jury instructions on a past pattern of domestic abuse, and that the admission of evidence pertaining to Morrow's OFPs did not constitute plain error, we affirm the postconviction court's denial of Gulbertson's petition for postconviction relief.

Affirmed.

---

**8.** Gulbertson argues that he received ineffective assistance of counsel because counsel failed to object to the OFP evidence at trial. But Gulbertson fails to make a claim of ineffective assistance that meets the legal standard laid out in *Strickland* because he has failed to show a reasonable probability that the failure to object to the admission of the cumulative OFP evidence had an impact on the outcome of the trial. *See Strickland*, 466 U.S. at 687–88, 691, 104 S.Ct. 2052 (requiring that for a claim of ineffective assistance of counsel to succeed, counsel's performance must have fallen below the standard of objective reasonableness and have had an effect on the judgment).