*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2090**

State of Minnesota,
Respondent,

vs.

Hugh Alexander Larson,
Appellant.

**Filed November 3, 2014
Affirmed as modified
Schellhas, Judge**

Stearns County District Court
File No. 73-CR-12-4554

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Worke, Judge; and Schellhas, Judge.

## UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges his convictions of second-degree criminal sexual conduct and false imprisonment and his sentences, arguing that: (1) the evidence is insufficient to

support his convictions; (2) the district court committed reversible error in admitting the victim's out-of-court statements to a medical professional; and (3) the court erred by sentencing appellant for false imprisonment. We affirm as modified.

**FACTS**

In November 2011, 35-month-old C.W. became separated from his stepfather, who was supervising him and several other young children at church. About eight to ten minutes after C.W.'s stepfather realized that C.W.'s whereabouts were unknown, C.W. emerged from a men's bathroom with appellant Hugh Alexander Larson. C.W.'s stepfather yelled at Larson, and C.W.'s mother called police. Larson told the church pastor and a police officer that he had helped C.W. use the toilet and denied touching C.W. in an inappropriate manner. That evening, C.W. told his mother that Larson had touched C.W.'s penis, that C.W. had touched Larson's penis, and that C.W.'s penis hurt and "was dirty." C.W.'s mother reported this information to police.

Larson gave a recorded statement to police in November 2011 in which he again claimed to have helped C.W. use the toilet and denied touching C.W. inappropriately. In December, Larson indicated in another statement that he had touched C.W.'s penis briefly while he was helping him with his clothes but denied that the touching was sexually motivated. Larson later told two fellow inmates at the Stearns County Jail that he had held down C.W.'s penis to direct his urine into the toilet, and he told one inmate that "[t]his was the first time he's ever gotten caught."

Following the November 2011 incident, C.W. began to have potty-training accidents and bedtime problems, including nightmares and fear of the dark. C.W. also

2

began to make masturbation motions and began to hit his penis. In December 2011, C.W. again told his mother that the "big man" had touched his penis. C.W.'s mother asked him whether the man had hurt him, and C.W. responded affirmatively and pointed to his buttocks. C.W.'s mother also reported this information to police and took C.W. to a hospital, where a physician assistant examined him. C.W. told the physician assistant that "the big guy had hurt him" and had "touched his pee-pee and his butt" and that his "pee-pee and butt hurt." The physician assistant's examination of C.W. did not reveal any physical injuries. C.W. later saw a clinical therapist, who concluded that C.W. met the criteria for posttraumatic stress disorder (PTSD).

By an amended complaint filed in December 2012, respondent State of Minnesota charged Larson with second-degree criminal sexual conduct under Minn. Stat. § 609.343, subd. 1(a) (2010); kidnapping under Minn. Stat. § 609.25, subd. 1(2) (2010); and false imprisonment under Minn. Stat. § 609.255, subd. 2 (2010). The district court determined that C.W. lacked capacity to testify at trial and denied Larson's motion to suppress C.W.'s out-of-court statements to his mother and the physician assistant.

Larson waived his right to a jury trial, and the district court conducted a bench trial. Larson did not testify or call any witnesses. The district court found Larson guilty of second-degree criminal sexual conduct and false imprisonment and not guilty of kidnapping. The court imposed a stayed 36-month prison sentence for Larson's conviction of criminal sexual conduct and a stayed 13-month prison sentence for his conviction of false imprisonment.

This appeal follows.

3

## D E C I S I O N

### *Sufficiency of the evidence*

Larson argues that the evidence is insufficient to support his convictions. "When reviewing a claim of insufficient evidence, our inquiry is limited to whether the fact-finder could have reasonably concluded that the defendant was guilty beyond a reasonable doubt." *Gulbertson v. State*, 843 N.W.2d 240, 244–45 (Minn. 2014). In conducting that inquiry, "[w]e view the evidence in the light most favorable to the verdict and assume that the fact finder believed the state's witnesses and disbelieved any contrary evidence." *Id.* at 245 (quotation omitted).

Larson argues that the evidence is insufficient to support his conviction of second-degree criminal sexual conduct because the state failed to prove that he acted with sexual or aggressive intent when he touched C.W.'s penis. "A person who engages in sexual contact with another person is guilty of criminal sexual conduct in the second degree if . . . the complainant is under 13 years of age and the actor is more than 36 months older than the complainant." Minn. Stat. § 609.343, subd. 1(a). Sexual contact includes "the intentional touching by the actor of the complainant's intimate parts," where such touching is "committed with sexual or aggressive intent." Minn. Stat. § 609.341, subd. 11(a)(i) (2010).

"[B]ecause intent is a state of mind, it is generally proved by inferences drawn from a person's words or actions in light of all the surrounding circumstances." *State v. Thompson*, 544 N.W.2d 8, 11 (Minn. 1996); *see also State v. Austin*, 788 N.W.2d 788, 792 (Minn. App. 2010) ("[A] showing of sexual intent does not require direct evidence of

4

the defendant's desires or gratification because a subjective sexual intent typically must be inferred from the nature of the conduct itself."), *review denied* (Minn. Dec. 14, 2010).

> We apply a two-step analysis in determining whether circumstantial evidence is sufficient to support a guilty verdict. The first step is to identify the circumstances proved. The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt.

*State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014) (quotations and citations omitted). "A [fact-finder] is in the best position to evaluate circumstantial evidence, and its verdict is entitled to due deference." *State v. Fairbanks*, 842 N.W.2d 297, 307 (Minn. 2014).

Here, the record supports, and Larson concedes in his brief, that the circumstances proved include the following:

- [Larson] and C.W. . . . were alone in a men's bathroom . . . for at least five minutes.
- [Larson] was not authorized, and did not have C.W.'s parents' permission, to bring C.W. into the bathroom.
- [Larson] shut and locked the bathroom door.
- [Larson] touched C.W.'s penis while inside the bathroom.
- C.W. appeared frightened as he exited the bathroom . . . .
- C.W. complained to his mother and a physician assistant that his penis hurt and that the "big man" touched his penis. Also, C.W. exhibited symptoms associated with being sexually assaulted. C.W. was diagnosed with post-traumatic stress disorder. . . .
- [Larson] . . . admitted he touched C.W.'s penis while helping C.W. pull his pants to his waist after using the bathroom.
- [Larson] stated to an inmate at the Steams County Jail that this was the first time he was "caught." [Larson] also admitted to inmates that he held C.W.'s penis down while C.W. went to the bathroom.

The record reveals that Larson related several inconsistent versions of the incident to police and inmates. He alternately denied that he had touched C.W.'s penis, acknowledged that he might have "grazed" or "brushed" C.W.'s penis while re-dressing him, stated that he had "readjust[ed]" C.W.'s penis while pulling up his underwear, and explained that he had held down C.W.'s penis to direct his urine into the toilet. Larson also repeatedly told police and inmates that the bathroom door had locked automatically after he and C.W. entered the bathroom. One of Larson's co-inmates testified about his familiarity with the church bathroom, noting that the door did not automatically lock. As above noted, Larson concedes that he shut and locked the bathroom door.

We conclude that the district court had "substantial grounds to doubt the veracity" of Larson's assertion that, while he touched C.W.'s penis, he did so without sexual or aggressive intent. *See State v. Race*, 383 N.W.2d 656, 662 (Minn. 1986) (quotation omitted) ("Significant inconsistencies in [defendant]'s statements to authorities substantially diminished the credibility of his [exculpatory] assertion . . . ."). We also conclude that the circumstances proved are inconsistent with any rational hypothesis except that Larson touched C.W.'s penis with sexual or aggressive intent. Accordingly, we conclude that Larson fails to show that his conviction for second-degree criminal sexual conduct is not supported by sufficient evidence.

Larson also argues that the evidence is insufficient to support his conviction of false imprisonment because his confinement and restraint of C.W. was incidental to his sexual touching of C.W. While Larson concedes that he confined and restrained C.W. in the bathroom by shutting and locking the door, he claims that such confinement and

6

restraint is not "criminally significant in the sense of being more than merely incidental to the underlying crime" of second-degree criminal sexual conduct. *See State v. Smith*, 669 N.W.2d 19, 32 (Minn. 2003), *overruled on other grounds by State v. Leake*, 699 N.W.2d 312, 323 (Minn. 2005). A person commits the offense of false imprisonment when he "knowingly lacking lawful authority to do so, intentionally *confines or restrains* someone else's child under the age of 18 years without consent of the child's parent or legal custodian." Minn. Stat. § 609.255, subd. 2 (emphasis added).

In the context of kidnapping, the supreme court has stated that "confinement or removal must be criminally significant in the sense of being more than merely incidental to the underlying crime."[1] *Smith*, 669 N.W.2d at 32. The supreme court concluded that "where the confinement or removal of the victim is *completely* incidental to the perpetration of a separate felony, it does not constitute kidnapping." *Id.* (emphasis added); *see also State v. Welch*, 675 N.W.2d 615, 620 (Minn. 2004) (concluding, when "[n]o removal—let alone nonincidental removal—[wa]s even alleged," that "facts clearly d[id] not support a conviction for kidnapping").

In this case, Larson was not convicted of kidnapping—he was convicted of false imprisonment. We have found no reported case addressing the applicability of *Smith* and *Welch* in the context of false imprisonment. Even assuming the applicability of *Smith* and *Welch*, we are persuaded that Larson's confinement and restraint of C.W. was not

---

[1] *See* Minn. Stat. § 609.25, subd. 1 (2010) (providing that a person commits the offense of kidnapping when he "*confines or removes* from one place to another . . . [a] person . . . under the age of 16 years, without the consent of the person's parents or other legal custodian," for any enumerated purpose (emphasis added)).

completely incidental to his commission of second-degree criminal sexual conduct. We conclude that Larson's taking C.W. into the bathroom and locking the door constituted confinement and restraint of C.W. that was "criminally significant in the sense of being more than merely incidental to the underlying crime [of second-degree criminal sexual conduct]." *See Smith*, 669 N.W.2d at 32. *Compare State v. Juarez*, 837 N.W.2d 473, 484–85 (Minn. 2013) (concluding that removal of victim from outside of bar to nearby narrow alley was not "completely incidental" to criminal sexual conduct, although "removal was committed at approximately the same time as [defendant]'s criminal sexual conduct and was intended to facilitate that conduct," since defendant "moved [victim] away from a safe location—in which she was out in the open and close to her friends—and transported her to a place that was confined and isolated, and where she would be more vulnerable to him"), *and State v. Earl*, 702 N.W.2d 711, 714, 722–23 (Minn. 2005) (concluding that removing victims from their living room and bedrooms and confining them in their kitchen was not merely incidental to burglary, "[a]lthough the confinement or removal . . . may have been necessary to commit the burglary," since it "is purposeful behavior in its own right" that "constitutes criminal conduct distinct from the burglary"), *with Welch*, 675 N.W.2d at 617, 620–21 (reasoning that any confinement effected by throwing victim to ground, straddling her, and grabbing her hair "is the very force and coercion that supports the attempted second-degree criminal sexual conduct conviction" and concluding that any confinement was incidental), *and Smith*, 669 N.W.2d at 32–33 (concluding that confinement that occurred when defendant momentarily blocked doorway of bedroom from which victim was trying to escape "was completely incidental

to the murder for which [defendant] was convicted"). Because Larson's confinement and restraint of C.W. was criminally significant, his argument that his conviction of false imprisonment is unsupported by sufficient evidence fails.

*Admission of hearsay*

Larson argues that the district court committed reversible error in admitting C.W.'s out-of-court statements to the physician assistant—that "the big guy had hurt him" and had "touched his pee-pee and his butt" and that his "pee-pee and butt hurt"— under the medical-diagnosis hearsay exception.[2] "Generally, a reviewing court defers to the district court's evidentiary rulings and will not overturn the rulings absent a clear abuse of discretion." *State v. Dobbins*, 725 N.W.2d 492, 505 (Minn. 2006).

The medical-diagnosis exception provides that out-of-court statements are admissible to prove the truth of the matter asserted therein if they are "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Minn. R. Evid. 803(4). The Minnesota Supreme Court has not adopted a broad rule that

---

[2] On appeal, Larson abandons previously asserted arguments that C.W.'s out-of-court statements to his mother constitute inadmissible hearsay and that admission of any of C.W.'s out-of-court statements violates Larson's rights under the Confrontation Clause. Even if Larson does not abandon his Confrontation Clause challenge to admission of C.W.'s out-of-court statements to the physician assistant, the challenge lacks merit. *See State v. Krasky*, 736 N.W.2d 636, 638, 641–42 (Minn. 2007) (reasoning that the "primary purpose" of six-year-old victim's report of sexual abuse by defendant to a nurse at Midwest Children's Resource Center was "to assess and protect [victim]'s health and welfare" and "conclud[ing] that [victim]'s statements to [the nurse] were nontestimonial and that admission of those statements will not violate [defendant]'s rights under the Confrontation Clause").

9

"statements of identification by child sexual abuse victims are always admissible under the medical diagnosis exception." *State v. Robinson*, 718 N.W.2d 400, 405 (Minn. 2006). "[S]tatements attributing fault, including statements identifying the accused perpetrator, are ordinarily not admissible" under the medical-diagnosis exception. *Id.* at 404. The supreme court has "recognized the importance of examining each statement individually and applying the facts on a case-by-case basis." *Id.* at 405. On such individual examination, statements of identification by child sexual abuse victims may be admissible under the medical-diagnosis exception. *See State v. Larson*, 453 N.W.2d 42, 47–48 (Minn. 1990) (*Larson I*) (holding that out-of-court statement of identification by preschool-aged victim of sexual abuse was "independently admissible" under medical-diagnosis exception), *vacated on other grounds*, 498 U.S. 801, 111 S. Ct. 29 (1990).[3] A child's statements to medical personnel "are admissible [under the medical-diagnosis exception] only if the evidence suggests that the child knew she was speaking to medical personnel and that it was important she tell the truth." *State v. Salazar*, 504 N.W.2d 774, 777 (Minn. 1993).

Here, although the district court did not make express findings before admitting C.W.'s out-of-court statements to the physician assistant under the medical-diagnosis exception, record evidence reflects that C.W. knew that the physician assistant was a medical professional and that it was important to tell the truth. C.W.'s parents told him that the physician assistant was a doctor, and the physician assistant examined C.W. in a

---

[3] We are unaware of any relationship between appellant Hugh Larson in this case and appellant Bruce Larson in the cited case.

hospital emergency room. Moreover, C.W. had a "treatment-related motive" to tell the truth during the examination so that the physician assistant could address C.W.'s previously reported pain. *See State v. Larson*, 472 N.W.2d 120, 126 (Minn. 1991) (*Larson II*) (reasoning that preschool-aged victim of sexual abuse, who was taken to family practice clinic after complaining of vaginal soreness and burning urination, "had the same 'selfish' treatment-related motive to speak the truth that anyone has when one goes to a doctor's office sincerely inquiring about one or more symptoms" (footnote omitted)). We therefore conclude that the district court did not err in admitting C.W.'s out-of-court statements to the physician assistant under the medical-diagnosis exception.

Regardless of whether C.W.'s statements to the physician assistant are admissible under the medical-diagnosis exception or otherwise, the statements are nearly identical to other statements made by C.W. to his mother. And Larson does not challenge the admission of those statements. Moreover, Larson admitted to touching C.W.'s penis, and much of the circumstantial evidence proving that the touching was done with sexual or aggressive intent is independent of any out-of-court statement by C.W. Consequently, any error in the district court's admission of C.W.'s statements to the physician assistant is harmless. *See State v. McDonald-Richards*, 840 N.W.2d 9, 19 (Minn. 2013) ("Improperly admitted evidence is harmless . . . when the evidence is cumulative or there is other extensive evidence connecting the defendant to the commission of the crime." (quotation omitted)).

*Sentencing error*

Larson argues that the district court erred by sentencing him for false imprisonment because the criminal sexual conduct and the false imprisonment occurred together as part of a single behavioral incident.[4] Generally, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Minn. Stat. § 609.035, subd. 1 (2010). The state concedes, and we independently conclude, that the criminal sexual conduct and the false imprisonment occurred as part of a single behavioral incident, i.e., a single course of conduct. "Whether a defendant's [multiple] offenses occurred as part of a single course of conduct is a mixed question of law and fact" that "depends on the facts and circumstances of the case. Offenses are part of a single course of conduct if the offenses occurred at substantially the same time and place and were motivated by a single criminal objective." *State v. Jones*, 848 N.W.2d 528, 533 (Minn. 2014) (citation omitted).

Here, the second-degree criminal sexual conduct and the false imprisonment occurred during the same eight-to-ten-minute period in the same bathroom. Larson's conduct, in entering the bathroom with C.W., locking the door, and touching C.W.'s penis, reflects a single criminal objective: to molest C.W. without being seen doing so. *Cf. State v. Herberg*, 324 N.W.2d 346, 349 (Minn. 1982) (concluding that defendant's one "underlying motivation" for two acts of penetration was "to satisfy his perverse sexual needs," although "[d]efendant moved the victim to a different place before

---

[4] Although Larson raises his sentencing argument for the first time on appeal, the statutory protection against multiple sentencing "is *not* forfeited by failing to raise the issue in the district court." *State v. Osborne*, 715 N.W.2d 436, 441 n.3 (Minn. 2006).

committing the second act of penetration," where defendant moved the victim "only because he feared that the first location was too open and that they might be noticed"). We therefore conclude that the district court erred by sentencing Larson for both second-degree criminal sexual conduct and false imprisonment.

Minnesota Statutes section 609.035, subdivision 1, "contemplates that a defendant should be sentenced only for the most serious offense arising from a single course of conduct because imposing up to the maximum punishment for the most serious offense will include punishment for all offenses." *Jones*, 848 N.W.2d at 538 n.6 (quotation omitted). "[The supreme court] ha[s] indicated that an appellate court vacating a sentence or sentences pursuant to section 609.035 should look to the length of the sentences actually imposed . . . to ascertain which offense is the most serious, leaving the longest sentence in place." *State v. Kebaso*, 713 N.W.2d 317, 322 (Minn. 2006) (citing *State v. Norregaard*, 384 N.W.2d 449, 450 (Minn. 1986); *State v. Herberg*, 324 N.W.2d 346, 350 (Minn. 1982); *State v. Boley*, 299 N.W.2d 924, 926 (Minn. 1980)).

In this case, the district court imposed a stayed 36-month prison sentence with probation for second-degree criminal sexual conduct and a stayed 13-month prison sentence with probation for false imprisonment. We therefore vacate Larson's 13-month sentence for false imprisonment.

**Affirmed as modified.**