*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0364**

State of Minnesota,
Respondent,

vs.

Matthew Roy Horvath,
Appellant.

**Filed December 8, 2014
Affirmed
Hudson, Judge**

Washington County District Court
File No. 82-CR-12-3623

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Pete Orput, Washington County Attorney, Robin M. Wolpert, Kari A. Lindstrom, Assistant County Attorneys, Stillwater, Minnesota (for respondent)

Brian P. Karalus, Stephen Grigsby, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Hudson, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HUDSON**, Judge

Appellant challenges his convictions of operating a motorboat under the influence of alcohol and chemical-test refusal, arguing that (1) the district court improperly instructed the jury by not requiring unanimous findings on the facts underlying an

element of the offense and by giving the standard jury instruction on the elements of test refusal; (2) the admission of hearsay statements by a passenger in the boat prejudicially affected appellant's defense; and (3) the district court abused its discretion by admitting evidence of appellant's belligerent post-arrest behavior as evidence of his impairment. We affirm.

## FACTS

The state charged appellant Matthew Roy Horvath with one felony count of operating a motorboat under the influence of alcohol in violation of Minn. Stat. § 169A.20, subd. 1a(1) (2012), and one felony count of refusal to submit to chemical testing in violation of Minn. Stat. § 169A.20, subd. 2 (2012). At appellant's jury trial, a Washington County deputy sheriff testified that, at about 9:00 p.m., while patrolling on a lake near Forest Lake, he observed a boat underway without full navigation lights. The boat appeared to be propelled by a trolling motor off its front, with its main motor lifted out of the water. The deputy testified that as he approached the boat, he saw appellant move back and forth from the front of the boat towards its center, the location of the console and the throttle. He also observed that a woman was seated on a pedestal seat at the back of the boat and did not move from that position.

The deputy testified that, when questioned, appellant stated that he must have had the lighting switch in the wrong position. He also showed the deputy a remote control for the trolling motor. The deputy testified that the main trolling motor control, which had a foot pedal, was located near the bow of the boat. The deputy noticed an odor of alcohol; that appellant had slightly slurred speech, a flushed face, and watery eyes; and that open

2

beer cans were present. He asked appellant if he had been drinking; appellant responded that he had a couple of drinks. After appellant had difficulty performing field sobriety tests and declined to take a preliminary breath test, the deputy placed him under arrest. According to the deputy, appellant then stated that he had not been operating the boat and asked the woman, J.W., to indicate that she was operating the boat, but J.W. sat there without speaking.

The deputy testified that appellant became very belligerent and agitated. Defense counsel objected on the grounds of relevance. The prosecutor argued that the evidence went to appellant's state of mind; the district court overruled the objection. The deputy also testified that, during transport to the law enforcement center, appellant, although compliant, continued to act in a confrontational and argumentative manner, swearing and repeatedly asking why he was being arrested. The deputy testified that he read the implied-consent advisory to appellant, and appellant again declined testing.

The jury found appellant guilty of both counts. The district court denied appellant's motion for a new trial and sentenced him to 54 months, a downward dispositional departure, with a stay of execution and conditions of probation.

## D E C I S I O N

## I

Appellant challenges the district court's jury instructions, to which he did not object at trial. "[F]ailure to object to jury instructions precludes review unless the appellant can show that there was a plain error affecting substantial rights." *Gulbertson v. State*, 843 N.W.2d 240, 247 (Minn. 2014). Under that standard, we will reverse trial

error if there is an error that was plain and if appellant's substantial rights were affected by the error. *State v. Hayes*, 831 N.W.2d 546, 555 (Minn. 2013). "An error is plain if it contravenes case law, a rule, or a standard of conduct." *Id*. (quotation omitted). If these three prongs are met, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings. *Id*.

Jury instructions must define the crime charged and explain the elements of the offense; they must not materially misstate the law. *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001). The district court has "considerable latitude" in selecting the exact language of the instructions. *Gulbertson*, 843 N.W.2d at 247. We review the instructions as a whole and "will not reverse where [they] overall fairly and correctly state the applicable law." *Id*.

Appellant argues that the district court committed plain error by giving jury instructions that were not consistent with the Minnesota Supreme Court's opinion in *State v. Koppi*, 798 N.W.2d 358 (Minn. 2011). In *Koppi*, the supreme court held that the district court committed prejudicial error by instructing the jury that "[p]robable cause means that the officer can explain the reason the officer believes it was more likely than not that the defendant drove, operated or was in physical control of a motor vehicle while under the influence of alcohol." *Id*. at 363 (quoting 10A *Minnesota Practice*, CRIMJIG 29.28 (Supp. 2009)). The supreme court held that the instruction contained three flaws: (1) it did not require an officer to articulate the specific circumstances and observations supporting probable cause; (2) it "[did] not require the jury to determine whether a reasonable police officer would find probable cause that [the defendant] was driving

4

while impaired"; and (3) it stated an erroneous "more likely than not" standard for the officer's basis for probable cause, rather than the correct "honest and strong suspicion" standard. *Id*. (quotation omitted).

The district court here instructed the jury on probable cause for the test-refusal count as follows:

> The elements of a refusal to submit to testing are, first, a peace officer had probable cause to believe that the defendant operated or was in physical control of a motorboat while under the influence of alcohol.
>
> Probable cause means that the officer testified to the objective facts and circumstances that led the officer to have an honest and strong suspicion that the defendant was operating or in physical control of a motorboat while under the influence of alcohol.
>
> You must evaluate the totality of the circumstances from the viewpoint of a reasonable officer considering the arresting officer's observations, experience and training.[1]

Appellant argues that these instructions were deficient because they did not instruct the jury "that they must agree unanimously on each constituent fact which warrants the conclusion of probable cause." Similarly, he contends that they materially misstated the law because they directed the jury to draw a legal conclusion on probable cause and evaluate the totality of the circumstances without requiring them to first find those circumstances true beyond a reasonable doubt. We reject these arguments.

---

[1] This instruction is similar to, but not identical to, the pattern instruction on the elements of test refusal, as revised after *Koppi*. *See* 10A *Minnesota Practice*, CRIMJIG 29.28 (Supp. 2014).

To convict a defendant, a jury must find that the state has proved each element of the offense. *State v. Pendleton*, 725 N.W.2d 717, 730–31 (Minn. 2007). "But the jury does not have to unanimously agree on the facts underlying an element of a crime in all cases." *Id.* at 731; *see also State v. Hager*, 727 N.W.2d 668, 674 (Minn. App. 2007) (stating that Minnesota courts have "recognized the distinction between the basic elements of the crime and the facts underlying those basic elements"). Stated another way, a jury need not decide unanimously "which of several possible sets of underlying brute facts make up a particular element" of the offense in order to convict. *Richardson v. United States*, 526 U.S. 813, 817, 119 S. Ct. 1707, 1710 (1999); *see also State v. Ayala-Leyva*, 848 N.W.2d 546, 554–55 (Minn. App. 2014) (concluding that the district court did not plainly err by failing to instruct the jury that it was required to identify which of 20 overt acts supported the overt-acts requirement of conspiracy), *review granted* (Minn. Aug. 5, 2014).

Here, the deputy observed that appellant showed several different indicia of intoxication. The jury was not required to identify which of those indicia supported its finding that the probable-cause element of the test-refusal offense had been met. *See Pendleton*, 725 N.W.2d at 731; *see also State v. Kier*, 678 N.W.2d 672, 678 (Minn. App. 2004) (stating that "[a]n officer needs only one objective indication of intoxication to constitute probable cause to believe a person is under the influence"). And appellant cites no authority to support his argument that the jury must apply a two-step analysis of first finding circumstances true beyond a reasonable doubt before evaluating the circumstances to find that the probable-cause element was met.

6

Appellant also argues that the jury instruction "constructively amended the [r]efusal statute and made it unconstitutionally vague" because its application would "make[] a person criminally liable for the unknown variable of the particular police officer's training and experience." If an instruction is so vague and confusing that it violates fundamental ideas of fairness, a court "inquire[s] whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S. Ct. 475, 482 (1991) (quotation omitted). But in this context, fundamental fairness is "very narrowly" defined. *Id.* at 73, 112 S. Ct. 482. Further, a jury instruction is not generally analyzed under the "void for vagueness" standard because it "does not establish the elements of a crime, but merely attempts to explain a statutory definition." *People v. Raley*, 830 P.2d 712, 731 (Cal. App. 1992). We discern no error of fundamental fairness in the district court's instructions, and appellant has not established plain error based on this argument.

We also reject appellant's related contention that the challenged instruction invited a subjective assessment of probable cause. The instruction directed the jury to "evaluate the totality of the circumstances from the viewpoint of a reasonable officer considering the arresting officer's observations, experience and training." Appellant argues that the term "evaluate" refers to a subjective process which exceeds the jury's fact-finding role. In a criminal case, "the court shall decide questions of law, except in cases of criminal defamation, and the jury shall decide questions of fact." Minn. Stat. § 631.06 (2012). But a process of evaluation is implicit in the jury's role to "decide" factual questions. *See id.*

Appellant also maintains that the instruction lacked an objective standard because it allowed the jury to consider an individual officer's training and experience when determining probable cause. But the supreme court in *Koppi* recognized that the probable-cause standard "incorporates the individual characteristics and intuitions of the officer to some extent." 798 N.W.2d at 362. And the instructions correctly required the officer to "testif[y] to the objective facts and circumstances that led the officer to have an honest and strong suspicion that the defendant was operating or in physical control of a motorboat while under the influence of alcohol." *Cf. id.* at 363 (holding as error instructions that "[did] not require the officer to recite actual observations and circumstances supporting a finding of probable cause").

We thus conclude that, taken as a whole, the jury instructions comport with the requirements set forth in *Koppi* and were not plainly erroneous. Therefore, we need not reach the third prong of the plain-error analysis, which considers whether the error affected substantial rights. *See Hayes*, 831 N.W.2d at 555.

## II

Appellant argues that the admission of the deputy's spontaneous, unobjected-to hearsay testimony that J.W. did not know how to drive the boat warrants reversal because it was prejudicially damaging to his defense. Because appellant did not move for a mistrial or request a curative instruction, we review his objection for plain error. *See State v. Manthey*, 711 N.W.2d 498, 505 (Minn. 2006) (noting plain-error standard for district court's failure to act sua sponte to limit effect of inadmissible testimony by giving a curative instruction or granting a mistrial). The state has an obligation to caution its

8

witnesses against making prejudicial statements. *See State v. Underwood*, 281 N.W.2d 337, 342 (Minn. 1979) (stating that, to avoid the problem occasioned by a witness blurting out objectionable testimony, the state has a duty before trial to properly prepare its witnesses). But the district court is in the best position to determine whether a witness's spontaneous statement creates sufficient prejudice so that the defendant was denied a fair trial. *Manthey*, 711 N.W.2d at 506.

On cross-examination, the following colloquy occurred between defense counsel and the deputy:

Q: Did you ever talk to [J.W.]?

A.: I did.

Q.: And what did she have to say, if anything?

A.: Very little.

The district court then sustained a hearsay objection by the prosecutor. Defense counsel resumed questioning the deputy:

Q.: So at some point in time you did in fact converse with [J.W.]?

A.: Absolutely. A passenger on a boat.

Q.: And there was — and she, without saying what she did say, did she ever open up her mouth and words come out?

A.: Did she speak?

Q.: Yes.

A.: She answered the questions I asked her.

Q.: Okay. What questions did you ask her?

9

A.:     I asked her if that one beer was hers, how she was doing.

Q.:     I'm going to ask you, did you ever document that in any of your reports; that [J.W.] and you actually had a conversation?

A.:     I have to look. When I first placed [appellant] under arrest, . . . I asked [her] if she would operate the—with his permission—take the boat ashore and she declined.

Q,:     Okay. This was after the arrest?

A.:     [She] declined saying that she did not know how to operate the boat. And with [appellant's] permission we towed it in.

Q.:     And . . . did you actually ask [her] to drive the boat after taking a PBT?

A.:     She refused a PBT. That was . . . part of my conversation with her.

Q.:     And this was after the arrest of [appellant]?

A.:     Part of my conversation was if you pass the PBT would you be willing to drive the boat with [appellant's] permission? She said I don't know how to drive the boat.

Q.:     Or she was just denying to take the PBT?

A.:     No her words were I don't know how to operate the boat.

Defense counsel then asked the deputy if he noticed any signs of impairment with J.W., and he testified that he did not. He also testified that J.W. was "nowhere near" the operating controls of the boat. He testified that he believed appellant was operating the boat, based on his position in the front of the boat, where the foot pedal for the trolling motor was located.

On redirect, the prosecutor asked the deputy what J.W.'s response was when asked whether she would operate the boat. Defense counsel objected, the prosecutor argued that the defense had opened the door, and the district court overruled the objection. *See*

10

*State v. Bailey*, 732 N.W.2d 612, 622 (Minn. 2007) (stating that opening the door occurs when one party introduces certain material, creating a right in the opponent to respond with otherwise inadmissible material). The deputy then testified that she responded that she did not know how to operate the boat.

The record shows that defense counsel on cross-examination raised the topic of the deputy's conversation with J.W. Under these circumstances, the district court did not commit plain error by declining to act sua sponte to limit the deputy's testimony and instead deferring to defense counsel's trial strategy. *See, e.g. State v. Washington*, 693 N.W.2d 195, 205 (Minn. 2005) (concluding that plain error did not occur when the district court did not sua sponte limit objectionable testimony, stating, "[w]e do not agree that the district court must, or even should, interfere with the trial strategy of the defendant").

### III

Appellant argues that the district court abused its discretion by admitting evidence of his post-arrest belligerent behavior, including cursing at police and kicking the squad car. On review, appellant has the burden to establish both an abuse of discretion in admitting the evidence and that he was prejudiced by its admission. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). An error is prejudicial if there is a reasonable possibility that the verdict might have been different if the evidence had not been admitted. *State v. Post*, 512 N.W.2d 99, 102 (Minn. 1994).

At trial, the district court overruled appellant's objection to the admission of evidence of his post-arrest behavior on the ground of relevance. He argues that this

evidence was irrelevant to establishing probable cause, which does not require evidence of his state of mind, including whether he had an intent not to submit to testing. But appellant was also charged with operating a motorboat while under the influence. To convict appellant of that offense, the jury was required to find that he was under the influence of alcohol at the time he was in physical control of the motorboat. *See* Minn. Stat. § 169A.20, subd. 1a(1). Evidence of his post-arrest behavior was relevant and probative of whether the elements of that offense were met, and the district court did not abuse its discretion by admitting it.

**Affirmed.**