*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1126**

State of Minnesota,
Respondent,

vs.

George Barnard Crooks,
Appellant.

**Filed June 20, 2016
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CR143215

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Lillalva Lijo, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Tracy Smith, Judge.

## UNPUBLISHED OPINION

**REYES**, Judge

        Appellant argues that his conviction must be reversed because the state failed to prove beyond a reasonable doubt that he assaulted the complainant. We affirm.

# FACTS

On October 24, 2014, complainant M.F. reported to the police that her boyfriend, appellant George Barnard Crooks, assaulted her at her home and threatened to kill her. Appellant was arrested and charged with one count of third-degree assault and one count of domestic assault.

M.F. testified to the following at trial. In October 2014, M.F. was working with sexually exploited and domestic-assault victims and taking classes at Metro State researching domestic violence. M.F. and appellant had been dating for about two years, and they were living together in her Minneapolis house, but she was in the process of moving out of the house. Appellant called M.F. multiple times the day of the incident, and during one call, he requested that she pick him up. M.F. refused, went home after work, and watched television in the basement. Upon appellant's arrival, he went down to the basement and requested that M.F. take him to the police station because he had been robbed. M.F. was reluctant and asked him details regarding the location of the station and parking.

Appellant became upset, yelled, and paced back and forth upstairs and downstairs. Appellant went back down to the basement, told M.F. to get her shoes on to leave, and continued pacing up and down the stairs. When she refused to take appellant, he pushed her onto the floor, hit and punched her in the head and eye, kicked her, and threw a stapler at her. M.F. used her hands and arms to block appellant's blows. He then picked up an ax and threatened to kill her. He also threatened to urinate on her. Then he dragged her to the stairs by her shirt and bra straps. M.F. walked upstairs and sat on the

love seat. Appellant yelled at and punched M.F. two more times. M.F. again put her hands up to block his punches. Before appellant could begin a third round of assault, M.F. jumped up, ran out the house, and yelled for someone to help her and to call 911. A neighbor called 911. M.F. stayed outside, and appellant went back into the house.

Police officers arrived about ten minutes later, and M.F. told them what happened. The officers searched the house for appellant, but he was not there. Shortly thereafter, M.F.'s adult daughter arrived and identified appellant, who was nearby. The officers took photographs of M.F.'s injuries, which were admitted at trial. She had a black eye, broken blood vessels in her eye, swollen hands, a fractured metacarpal bone in her right hand, multiple bruises on her body, and a shoeprint mark on her face. M.F. received treatment for the fractured metacarpal bone at the hospital.

A jury trial was held, and the jury found appellant guilty of both counts. Based on the third-degree assault conviction, the district court sentenced appellant to twelve months and one day in prison. This appeal follows.

## D E C I S I O N

I. **The evidence is sufficient to support appellant's conviction of third-degree assault.**

Appellant argues that the evidence is insufficient to prove that appellant assaulted M.F. beyond a reasonable doubt. We disagree.

A person commits third-degree assault by "assault[ing] another and inflict[ing] substantial bodily harm." Minn. Stat. § 609.223, subd. 1 (2014). "When assessing the sufficiency of the evidence, [we] make a [thorough] review of the record to determine

3

whether the evidence and reasonable inferences drawn therefrom, viewed in a light most favorable to the verdict, were sufficient to allow the jury to reach its verdict." *State v. Vang*, 847 N.W.2d 248, 258 (Minn. 2014) (quotation omitted). The appellate court must "assume[ ] that the [jury] believed the state's witnesses and disbelieved any contrary evidence." *Gulbertson v. State*, 843 N.W.2d 240, 245 (Minn. 2014) (first alteration in original) (quotation omitted). "This is especially true where resolution of the case depends on conflicting testimony." *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). A guilty verdict will not be reversed "if, giving due regard to the presumption of innocence and to the prosecution's burden of proving guilt beyond a reasonable doubt, the jury could reasonably have found the defendant guilty of the charged offense." *Vang*, 847 N.W.2d at 258 (quotation omitted).

The supreme court has stated that "determinations of weight and credibility are within the province of the jury." *Gulbertson*, 843 N.W.2d at 246; *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004). Moreover, "a conviction may be based on a single person's testimony" or the uncorroborated testimony of a complainant. *State v. Cao*, 788 N.W.2d 710, 717 (Minn. 2010).

Viewing the evidence in the light most favorable to the conviction, it was sufficient for the jurors to reach the verdict that appellant assaulted M.F. based on the direct evidence of M.F.'s testimony alone. M.F. stated that she and appellant were in a relationship for approximately two years and were living together. Appellant became angry because she would not give him a ride. In the basement and upper level of the house, appellant hit and punched M.F. in the head and eye, kicked her, and threw a

4

stapler at her. While assaulting M.F., appellant threatened to kill her. M.F. used her arms and hands to protect her head and face from appellant's blows. M.F.'s testimony alone is sufficient to support appellant's conviction.

Appellant argues that "the state presented no evidence besides M.F.'s testimony that an assault had occurred in the basement" and that the police "failed to locate or collect items from the basement including the ax that appellant allegedly held." Appellant provides no case law in support of these arguments. *State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997). Appellant's conviction can be upheld based on M.F.'s uncorroborated testimony alone.

Even though M.F.'s direct testimony alone is sufficient to support the jury's verdict, Officer Plys, Doctor Reitsema, and Officer Carpenter corroborated her testimony. *See State v. Halvorson*, 506 N.W.2d 331, 335 (Minn. App. 1993) (noting that complainant's testimony was sufficient alone, but consistent statements given by her fiancé, police, and doctor immediately after the crime further corroborated her statements). Officer Plys testified that he went to M.F.'s house based on an "unknown trouble call" from a female screaming for help. When Plys arrived, M.F. immediately told him that her boyfriend assaulted her. Plys observed that M.F.'s face was bruised and that the back of both of her hands were swollen, and he photographed her injuries. Plys detained appellant approximately thirty minutes after arriving at M.F.'s house. Appellant did not appear to have any injuries. Officer Plys' testimony corroborated M.F.'s statements. *See Cao*, 788 N.W.2d at 718 (providing that complainant's prompt reporting to police corroborated both her physical condition and the actual crime committed).

5

Dr. Reitsema, an emergency-room physician, also testified that M.F. informed her that appellant assaulted her with punches and kicks. M.F. complained of pain to her face and hands. M.F. had swelling in her hands, some bruising to her arms, legs, face, scalp, and neck, and a fracture to the metacarpal bone in her hand. Dr. Reitsema opined that the fracture in M.F.'s hand was due to trauma.

Finally, Officer Carpenter testified that when M.F. came to the office to file an order for protection, M.F. told Carpenter that appellant assaulted her because he was angry at her for refusing to give him a ride and that she had suffered a hand fracture. Carpenter took additional photographs of M.F.'s injuries including swelling of her face that looked like a shoe print. Carpenter subsequently went to the jail property room and took photos of the bottom of the shoes that appellant wore on the day of the assault. While M.F.'s trial testimony alone was sufficient to prove appellant assaulted her, *id.*, the complainant's prior consistent statements to police and the emergency room doctor immediately after the crime further corroborated her testimony. *See Halvorson*, 506 N.W.2d at 335.

Appellant argues that the jury should have believed his testimony, not M.F.'s. But M.F.'s testimony and the evidence corroborating her account that appellant assaulted her were sufficient to support the jury's verdict. *Id*. at 336 (noting that "[g]iven [the victim's] testimony and the corroborating evidence, the evidence was sufficient to support the jury's decision to believe [the victim's] account of the evening rather than [Halvorson's] account).

Appellant next argues that "M.F.'s credibility was undermined by her admission that she was attempting to end the relationship with appellant." Appellant further attacks M.F.'s credibility by arguing that repeated exposure to violence against women as part of her work and studies "improperly influenced her reporting of the events involving appellant" and that M.F. had a motive to report the assault. But as previously noted, we defer to the jury's credibility determinations. *Gulbertson*, 843 N.W.2d at 246.

Appellant cites *State v. Huss* to support his argument that M.F. was unduly influenced by her repeated exposure to domestic-abuse information. 506 N.W.2d 290 (Minn. 1993). But *Huss* is inapposite. In that case, a three-year-old minor child was continually exposed to a "highly suggestive" book "Sometimes It's OK to Tell Secrets" and its audio tape for months by her mother "with the express intention of encouraging the child to state that [her father] had [sexually] abused her." *Id*. at 290-93. The child's testimony at trial was contradictory and inconsistent with her prior statements. *Id*. at 292. The supreme court concluded that there was not sufficient evidence to support the conviction where the continual use of "Secrets" and its tape "may have caused the child to imagine the abuse." *Id*. at 293.

Unlike the young child in *Huss*, M.F. is a competent adult, and, therefore, not similarly susceptible to the influence of a third party or to literature or research. Nor is there any indication that M.F.'s testimony was contradictory or inconsistent.[1] And there

---

[1] Appellant makes one brief reference to M.F.'s inconsistent statement regarding past physical abuse between her and appellant and argues that this inconsistency "further undermines her credibility." Appellant cites no law in support of this argument. *Modern Recycling, Inc.*, 558 N.W.2d at 772. Even if we are to consider his argument, it is

7

is physical evidence here, unlike in *Huss*. Despite appellant's own self-serving argument that M.F. was improperly influenced by her research, the jury "believed the state's witnesses and disbelieved any contrary evidence." *Gulbertson*, 843 N.W.2d at 245.

**Affirmed.**

---

meritless. Appellate courts defer to the jury's credibility determinations. *Gulbertson*, 843 N.W.2d at 246.