# STATE OF MINNESOTA
## IN COURT OF APPEALS
### A14-1679

Francisco Herrera Sanchez, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed August 3, 2015**
**Affirmed**
**Willis, Judge\***

Rice County District Court
File No. 66-CR-13-2162

Jason A. Nielson, Igbanugo Partners Int'l Law Firm, Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Fossum, Rice County Attorney, Terence Swihart, Assistant County Attorney, Faribault, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Reilly, Judge; and Willis, Judge.

### S Y L L A B U S

The deportation consequences of a plea of guilty to third-degree criminal sexual conduct under Minn. Stat. § 609.344, subd. 1(b) (2012), are not "truly clear" as that term is used in *Padilla v. Kentucky*, 130 S. Ct. 1473, 1483 (2010), and therefore counsel is

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

required to advise a noncitizen client pleading to that charge only that a conviction "could" or "may" result in deportation.

**O P I N I O N**

**WILLIS**, Judge

Francisco Herrera Sanchez pleaded guilty to one count of third-degree criminal sexual conduct under Minn. Stat. § 609.344, subd. 1(b).  Because Herrera Sanchez is not a United States citizen, the government began removal proceedings against him following his conviction.  Herrera Sanchez then sought to withdraw his plea, arguing that counsel did not effectively assist him during the plea process because counsel failed to inform him that he would be deported based on his guilty plea.  Herrera Sanchez further argued that counsel's use of leading questions to provide a factual basis for his plea rendered the plea inaccurate.  Following an evidentiary hearing, the postconviction court found that Herrera Sanchez received effective assistance of counsel and that his plea was therefore accurate, and denied Herrera Sanchez's motion to withdraw his guilty plea.  Because the deportation consequences of Herrera Sanchez's plea were not "truly clear" as that term is used in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), and because the record demonstrates that Herrera Sanchez's plea was accurate, we affirm.

**FACTS**

Francisco Herrera Sanchez was born in Mexico in 1995, and he entered the United States 12 years later.  In 2012, he requested immigration status under a program called "Deferred Action for Childhood Arrivals," and the government granted his request.

One year later, the state charged Herrera Sanchez with two counts of third-degree criminal sexual conduct and one count of furnishing alcohol to a minor. Herrera Sanchez pleaded guilty. At the plea hearing, his counsel questioned him about the plea agreement that the two had reviewed, in which the state agreed to dismiss one count of third-degree criminal sexual conduct in exchange for a guilty plea on the remaining third-degree criminal-sexual-conduct count and the single count of furnishing alcohol to a minor:

> Q: And before signing [the plea agreement] did the two of us have an opportunity to review it and you had a chance to ask me any questions that you may have had?
> A: Yes.
> . . . .
> Q: Now, are you a citizen of the United States?
> A: No.
> Q: All right. Do you understand that as a result of a plea in this particular matter that, if you're not a citizen of the United States, a plea of guilty could result in either deportation, exclusion from admission to the United States, or denial of citizenship?
> A: Yes.
> Q: Knowing all those rights, do you still want to go forward with your plea?
> A: Yes.

The plea agreement referred to the possible immigration consequences of the plea in a single paragraph:

> My attorney has told me and I understand that if I am not a citizen of the United States this plea of guilty may result in deportation, exclusion from admission to the United States of America or denial of citizenship.

Herrera Sanchez signed the agreement.

Herrera Sanchez's counsel asked him the following questions in an effort to provide a factual basis for the plea:

> Q: Now, on May 24 [of 2013] were you here in the City of Faribault, County of Rice, State of Minnesota — oh, strike that. Were you in the City of Northfield, County of Rice, State of Minnesota?
> A: Yes, I was.
> Q: And on that occasion did you have an occasion to be in the company of a young woman with the initials of K.R.?
> A: Yes.
> Q: And after having reviewed all of the paperwork in this particular matter, you understand that K.R. had not yet reached her 16th birthday as of May 24th of 2013?
> A: Yes.
> Q: Now, did the two of you engage in sexual intercourse?
> A: Yes, we did.
> Q: And at that time were you at least 18 years of age?
> A: Yes.
> Q: And at that time that you engaged in the intercourse, did you know her to be not yet 16 years of age?
> A: Yes.
> Q: And prior to engaging in this intercourse, did you happen to provide her and her friends with an alcoholic beverage?
> A: Yes.
> Q: And did you know it was alcohol?
> A: Yes, I did.
> Q: And did you know that they had not yet reached 21 years of age?
> A: Yes.

The district court found that this testimony established a factual basis for Herrera Sanchez's plea and sentenced him on the remaining counts.

Shortly after sentencing, representatives of Immigration and Customs Enforcement (ICE) seized Herrera Sanchez and delivered him to the ICE office in Bloomington for the institution of removal proceedings.

Two months later, Herrera Sanchez obtained new counsel and sought to withdraw his guilty plea by filing a petition for postconviction relief. Herrera Sanchez argued that he received "clearly erroneous" advice about the immigration consequences of his plea

because counsel stated that by pleading guilty only that he "could" be deported. Herrera Sanchez alleged that because his sex-offense conviction was an aggravated felony under the Immigration and Nationality Act (INA), his removal was "an absolute certainty." He argued that caselaw required counsel to inform him that by pleading guilty he *would* be deported and that without this warning his plea was neither intelligent nor voluntary. He also asserted that because counsel used leading questions to establish the factual basis of the plea, his plea was not accurate.

The postconviction court granted Herrera Sanchez's request for an evidentiary hearing. After receiving testimony from Herrera Sanchez and his plea counsel, the postconviction court denied Herrera Sanchez's request to withdraw his plea. The postconviction court found that counsel had told Herrera Sanchez that he "was looking at deportation" following his plea. The postconviction court determined that, with this advice, counsel provided effective assistance rendering Herrera Sanchez's plea voluntary and intelligent. The postconviction court also rejected Herrera Sanchez's argument that counsel's use of leading questions to provide a factual basis rendered his plea inaccurate.

Herrera Sanchez's appeal follows.

## ISSUES

I.  Did the district court err by determining that Herrera Sanchez's counsel provided constitutionally sufficient advice concerning the immigration consequences of his plea?

II. Did the district court err by determining that counsel's use of leading questions did not, by itself, render Herrera Sanchez's plea inaccurate?

5

## ANALYSIS

Appellate courts review a postconviction court's denial of a petition for relief for an abuse of discretion. *Gulbertson v. State*, 843 N.W.2d 240, 244 (Minn. 2014). A postconviction court abuses its discretion if it bases its decision "on an erroneous view of the law" or its decision "is against logic and the facts in the record." *Id.* (quotation omitted). Appellate courts review a postconviction court's legal determinations de novo, and the postconviction court's findings of fact are reviewed for clear error. *Id.*

Before a defendant is sentenced, the district court "may" allow the defendant to withdraw his plea "if it is fair and just to do so." Minn. R. Crim. P. 15.05, subd. 2. But after sentencing, a defendant can withdraw a guilty plea only if "withdrawal is necessary to correct a manifest injustice." *Id.*, subd. 1. "A manifest injustice exists if a guilty plea is not valid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). A valid plea is one that is "accurate, voluntary, and intelligent." *Id.* Ineffective assistance of counsel renders a guilty plea involuntary and unintelligent. *See Butala v. State*, 664 N.W.2d 333, 341 (Minn. 2003); *see also Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 369 (1985). A motion to withdraw a plea after sentencing must be raised in a postconviction petition. *See James v. State*, 699 N.W.2d 723, 726 (Minn. 2005).

## I. Herrera Sanchez's counsel gave him constitutionally adequate advice regarding the immigration consequences of his plea.

Herrera Sanchez contends that his counsel did not effectively assist him during the plea process because counsel did not inform him that he would certainly be deported following his plea. He argues that counsel's ineffective assistance during the plea process means that his plea was neither voluntary nor intelligent.

6

Claims of ineffective assistance of counsel are analyzed under the two-pronged analysis explained in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014) (citing *Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064). Second, the defendant must prove that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Scruggs v. State*, 484 N.W.2d 21, 25 (Minn. 1992) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

Herrera Sanchez contends that counsel's assistance fell below the standard of objective reasonableness explained in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). In *Padilla*, the Supreme Court held that the Sixth Amendment requires that a noncitizen defendant be informed of the deportation risks associated with pleading guilty. *Id.* at 1482, 1486. The nature of the advice required varies depending on the immigration statute applicable to the guilty plea in question. *Id.* at 1483. When the applicable immigration statute "is not succinct and straightforward," counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* But when the deportation consequences of a plea are "truly clear" and counsel can "easily determine[]" those consequences "simply from reading the text of the statute," the duty to give more robust advice about the likelihood of deportation is "equally clear." *Id*.

Herrera Sanchez argues that counsel could have "easily determined" that his plea to third-degree criminal sexual conduct would lead to him being deported because it is an

7

aggravated felony under the INA, and individuals convicted of aggravated felonies are automatically deported. He asserts, therefore, that under *Padilla*, counsel had the "clear" duty to advise him that he "faced certain deportation" by pleading guilty, and counsel failed to provide the necessary warning. We disagree.

The immigration statute governing whether Herrera Sanchez's conviction would lead to deportation is not "truly clear" in the sense that the term is used in *Padilla*. In *Padilla*, the Supreme Court analyzed the following statute:

> Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

*Id.* at 1483. The court noted that "virtually every drug offense except for only the most insignificant marijuana offenses[] is a deportable offense" under this statute. *Id.* at 1477. The Supreme Court stated that the "consequences of Padilla's plea could easily be determined from reading the removal statute" because that statute provided that upon a conviction for the offense with which he was charged, "his deportation was presumptively mandatory." *Id*. at 1483. And because the relevant immigration statute was "succinct, clear, and explicit in defining the removal consequence for Padilla's conviction," Padilla's counsel had the "equally clear" duty to provide more definite advice about the immigration consequences of his plea. *Id.*

The "terms of the relevant immigration statute" governing Herrera Sanchez's deportation are not "succinct, clear, and explicit" as those words are used in *Padilla*. Under the INA, "[a]ny alien who is convicted of an aggravated felony at any time after

8

admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii) (2012). The INA lists several federal crimes that qualify as "aggravated felon[ies]" and also describes several classes of "generic" state and federal crimes that are aggravated felonies. *See Nijhawan v. Holder*, 557 U.S. 29, 37, 129 S. Ct. 2294, 2300 (2009). For federal statutory-interpretation purposes, "generic crimes" encompass "all crimes having certain common characteristics . . . regardless of how they [are] labeled by state law." *See Taylor v. United States*, 495 U.S. 575, 589, 110 S. Ct. 2143, 2153 (1990).

Herrera Sanchez contends that third-degree criminal sexual conduct under Minn. Stat. § 609.344, subd. 1(b), satisfies the INA's definition of the "generic" crime of "sexual abuse of a minor." *See* 8 U.S.C. § 1101 (a)(43)(A) (2012). But the INA does not define "sexual abuse of a minor," and Herrera Sanchez cites no case by a court binding this one that has determined that the conduct proscribed by Minn. Stat. § 609.344, subd. 1(b), is "sexual abuse of a minor." Therefore, counsel could not have simply examined the relevant statute or analyzed binding caselaw to determine that Herrera Sanchez's conviction was an aggravated felony. Under *Padilla*, we think this ends inquiry into whether the deportation consequences associated with Herrera Sanchez's plea are "truly clear" because "the terms of the relevant immigration statute" are not "succinct, clear, and explicit in defining the removal consequence" for Herrera Sanchez's conviction. 130 S. Ct. at 1483.

But Herrera Sanchez maintains that his counsel could have easily determined that his plea to third-degree criminal sexual conduct would lead to his deportation if counsel had examined more than the relevant immigration statute or the Supreme Court and

9

Eighth Circuit caselaw. We conclude that Herrera Sanchez argues for an extension of *Padilla*. Herrera Sanchez states that a federal agency, the Board of Immigration Appeals (BIA), has concluded that "sexual abuse of a minor" requires (1) a sexual act (2) against a minor (3) involving contact. He further contends that because the Eighth Circuit has not addressed whether it would apply the BIA's definition of "sexual abuse of a minor" to Minnesota's third-degree-criminal-sexual-conduct statute, "the long-standing, precedent-setting, en banc decision of [the BIA] applies as the rule of law throughout the [Eighth] Circuit." He contends that because his offense involved a sexual act inflicted on a minor that involved contact, he committed the offense of "sexual abuse of a minor" under an agency interpretation that, because it has not yet been rejected by the Eighth Circuit, controls courts in the Eighth Circuit.

But federal courts defer to reasonable agency interpretations of statutes only when those statutes are *ambiguous*. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-45, 104 S. Ct. 2778, 2781-83 (1984). And the cases from other circuits that Herrera Sanchez cites have concluded that the INA's definition of "sexual abuse of a minor" is ambiguous and have therefore accorded deference to the BIA's interpretation. *See, e.g.*, *Restrepo v. Attorney Gen. of the U.S.*, 617 F.3d 787, 795-96 (3d Cir. 2010). And *Padilla* directs courts to examine the clarity of immigration consequences by examining whether the *statute* governing the immigration consequences is "truly clear." 130 S. Ct. at 1483. There is nothing in *Padilla* to suggest that the Supreme Court would consider the immigration consequences of a plea "truly clear" if

10

counsel must analyze cases from other circuits that in turn analyze agency interpretations of *ambiguous* statutes.

Instead, we conclude that in this case, "the law is not succinct and straightforward" and therefore "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* Because the plea agreement and plea-hearing transcript unambiguously show that counsel informed Herrera Sanchez that he "may" be deported, counsel's performance was not objectively unreasonable. *See id.* Because counsel's performance was not objectively unreasonable, Herrera Sanchez cannot prevail on his claim that he received ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

## II. Counsel's use of leading questions to establish a factual basis for Herrera Sanchez's plea did not render his plea inaccurate.

Herrera Sanchez also argues that counsel's use of leading questions to establish the factual basis for his plea rendered his plea inaccurate. An accurate plea must be supported by "a proper factual basis" in the record. *Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012). Typically, a defendant's expression "in his own words [of] what happened" provides this basis. *Raleigh*, 778 N.W.2d at 94. But even if counsel "does not elicit proper responses, a defendant may not withdraw his plea if the record contains sufficient evidence to support the conviction." *See Lussier*, 821 N.W.2d at 589 (quotations omitted).

Herrera Sanchez cites no authority for his argument that counsel's use of leading questions to provide a factual basis for his plea, by itself, renders his plea inaccurate.

11

And his argument ignores the holding of the Minnesota Supreme Court that when faced with a purportedly deficient factual basis for a plea, we are to examine the record to determine if there is sufficient evidence to support the plea. *See id.* We are convinced that the record here contains ample evidence to show that Herrera Sanchez's plea was accurate.

The complaint may provide a factual basis for a defendant's plea, and we are permitted to examine the complaint to assess whether a defendant's plea was accurate. *See State v. Trott*, 338 N.W.2d 248, 252 (Minn. 1983). In the complaint here, the state alleges that Herrera Sanchez provided alcohol to a 15-year-old girl and that he sexually penetrated her when he was 29 months older than the victim. These facts satisfy each element of both of his convictions. *See* Minn. Stat. § 340A.503, subd. 2(1) (2012) ("It is unlawful for any person . . . to sell, barter, furnish, or give alcoholic beverages to a person under 21 years of age. . . ."); Minn. Stat. § 609.344, subd. 1(b) ("A person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the third degree if any of the following circumstances exists: the complainant is at least 13 but less than 16 years of age and the actor is more than 24 months older than the complainant. . . .").

Herrera Sanchez does not dispute any of these facts. Instead, he simply asserts that because counsel used leading questions to establish a basis for his plea we must permit him to withdraw the plea. But the use of leading questions does not, by itself, require reversal. *Lussier*, 821 N.W.2d at 589. And there is sufficient support in the record to show that his plea was accurate.

12

## DECISION

Because counsel could not have easily determined that Sanchez Herrera's plea would render him immediately deportable simply by looking at the INA or binding caselaw, counsel was required to inform Herrera Sanchez only that his plea might result in his deportation.

Because the use of leading questions does not, by itself, render a plea inaccurate, and because there is sufficient support in the record to provide a factual basis for Herrera Sanchez's plea, his plea was accurate.

**Affirmed.**