*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0181**

Luis Gerardo Garcia Urbano, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed November 28, 2016
Affirmed
Schellhas, Judge**

Yellow Medicine County District Court
File Nos. 87-CR-14-486, 87-CR-14-487, 87-CR-15-117

Herbert A. Igbanugo, Jason A. Nielson, Igbanugo Partners Int'l Law Firm, Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Keith Helgeson, Yellow Medicine County Attorney, Amanda C. Sieling, Assistant County Attorney, Granite Falls, Minnesota (for respondent)

Considered and decided by Kirk, Presiding Judge; Schellhas, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges the district court's denial of his postconviction petition to withdraw his guilty pleas, arguing that trial counsel's representation was ineffective during

the plea process because counsel failed to provide him "correct advice" when the deportation consequences of his plea were "truly clear." We affirm.

## FACTS

Appellant Luis Urbano was born in Mexico and legally entered the United States at age 17 on an immigrant visa. He obtained lawful permanent residence on April 19, 2014. In August, he began a sexual relationship with 15-year-old G.R. Urbano turned 18 on August 25, 2014. In October, G.R.'s parents reported to police that G.R. was pregnant with Urbano's child. G.R. acknowledged that she and Urbano had sexual relations in the beginning of September and two weeks prior to that. Urbano admitted that he had sexual intercourse with G.R. at least once before his 18th birthday and at least once after his 18th birthday. Urbano is 35 months older than G.R. Respondent State of Minnesota charged Urbano with one count of third-degree criminal sexual conduct, and G.R.'s parents obtained a harassment restraining order against Urbano, forbidding him to have any contact with G.R. or her family.

In November 2014, G.R.'s mother found Urbano under G.R.'s bed and dressed only in his underwear and reported this to police. Urbano admitted that he had sexual intercourse with G.R. and that he violated the harassment restraining order. Police charged Urbano with violation of a harassment restraining order and an additional count of third-degree criminal sexual conduct.

At a plea hearing on December 1, 2014, on all charges, Urbano stated that he had had enough time to speak to counsel about the charges, his legal rights, and possible defenses. The district court twice asked Urbano if he understood that pleading guilty could

2

result in immigration consequences, including deportation. Urbano responded affirmatively each time. Defense counsel asked Urbano if he had explained to him "that there could be consequences including jail and immigration things?" Urbano answered, "Yes, you explained that to me well and clearly." The court then said:

> Mr. Urbano, I believe that you have a clear understanding of what the State claims that you did, I believe that you have had an adequate opportunity to speak with your attorney, and your attorney is competent and has fully advised you about the case. This is however, a very serious matter, and you are not a United States citizen and there could be immigration consequences. I will give you some additional time to think about this and come back on another day and enter a plea of guilty or not guilty. In other words, I'm not going to rush you into this. I will proceed today if you want to plead guilty, or I will give you some time to think about this, and look into immigration issues and possibly other consequences if you want some more time. What would you like to do?

Mr. Urbano stated that "it would be better to think about it for a little more time," and the court set another hearing.

On December 11, 2014, Urbano reappeared before the district court. The court again twice asked Urbano if he understood that there may be immigration consequences to a guilty plea, and each time Urbano said yes. He also confirmed that defense counsel had talked to him about the possible immigration issues related to a guilty plea. Urbano then pleaded guilty to one count of third-degree criminal sexual conduct and one count of violation of a harassment restraining order.

On March 12, 2015, the police arrested Urbano for fleeing a peace officer in a motor vehicle. The state charged him with fleeing a peace officer in a motor vehicle, fourth-degree driving while impaired (DWI), possessing an open bottle, and driving without a valid

3

license. On April 13, Urbano pleaded guilty to one count of fleeing a peace officer in a motor vehicle and one count of fourth-degree DWI. During the plea hearing, Urbano confirmed that his defense counsel had explained the charges to him, his legal rights, and the plea petition. The plea petition contained an advisory that a guilty plea may result in immigration consequences. At a hearing on April 27, before the later sentencing hearing, the district court said, "Mr. Garcia Urbano, I know from the presentence investigation [PSI] there is an immigration hold."[1]

At sentencing on April 27, 2015—on third-degree criminal sexual conduct, fleeing a peace officer in a motor vehicle, and fourth-degree DWI—Urbano's counsel acknowledged that he had received the PSI and stated, "I delivered a copy to the jail that was delivered to my client on April 22. And I believe that there were other bilingual people in jail that helped him get through it."[2] The district court then asked Urbano whether he wanted time to speak with his counsel about the PSI, and Urbano said yes. The court recessed so that counsel and Urbano could discuss the PSI. The PSI contains the corrections agent's recommendations and the following explanation regarding the recommendations:

> This agent is making these recommendations because U.S. Immigration and Customs Enforcement (ICE) has been in contact with the Yellow Medicine County Jail and the County Attorney's Office indicating their intention to detain [Urbano] upon his release from custody in Yellow Medicine County and initiate deportation proceedings. They confirmed he is in the United States on a green card, but that they will be requesting his card be revoked and he be deported back to Mexico. If the deportation is not approved by the Courts or if [Urbano] is deported but returns to the United States, it is particularly

[1] The transcript reflects that this brief hearing commenced at 1:15 p.m.
[2] The transcript reflects that the sentencing hearing commenced at 1:57 p.m.

important that he be subject to the conditions noted below for the sake of community safety. It is also extremely important [Urbano] understands that if he is not deported or is deported and returns to the United States, he needs to contact this agent immediately to resume supervision.

After the recess, the court asked counsel whether he wished to bring to the court's attention any factual corrections in the PSI, and counsel said no.

On July 10, 2015, after his release from jail, U.S. Immigration and Customs Enforcement detained Urbano. In late September and early October, Urbano moved to vacate his convictions and, alternatively, to withdraw his guilty pleas to third-degree criminal sexual conduct and fleeing a peace officer in a motor vehicle. The district court conducted an evidentiary hearing on both motions and heard testimony from Urbano and his trial counsel. The court denied Urbano's motions.

This appeal follows.

## DECISION

Urbano sought relief from his convictions in district court on the following grounds: (1) his pleas were not accurate, voluntary, or intelligent; (2) "the record does not reflect that [he] was aware or advised of the draconian immigration consequences that would result from pleading guilty or that the Department of Homeland Security would institute removal proceedings against him, in light of the U.S. Supreme Court's ruling in *Padilla v. Kentucky*"; (3) Urbano is "actually innocent" of the crimes for which he is convicted; and (4) "the Court's reliance on Minn. R. Crim. P. 15.01 and/or 15.02 for the plea procedure was unconstitutional" because they violate Urbano's "procedural and substantive due process rights guaranteed to every criminal defendant by the United States Constitution."

5

At the evidentiary hearing on Urbano's motions, when asked if, "at any time," his counsel advised him that "there may, or could be immigration consequences because [he was] not a citizen—as a result of [his] plea because [he was] not a citizen of the United States," Urbano said, "That I remember, no." He testified that he did not meet and talk with his counsel about the immigration consequences of his plea and his counsel did not "ever show [him] a plea petition that contained a line that states there may be immigration consequences of [his] plea if [he was] not a citizen of the United States." When asked whether immigration consequences were brought up at his plea hearing in December 2014, he said, "I remember that when I plead guilty the Judge said something to me about immigration that there could be some problems, but I didn't pay a lot of attention. I thought that that would be something that we could fight in the future." Urbano also testified that if he had known the consequences of his guilty pleas, he "probably would have taken [his] case to hearing because the most important thing in [his] entire life is to be here in the United States . . . well the truth is my family here is the most important thing for me." The district court found that "[Urbano] did not testify credibly as to what was discussed and when."

Urbano's trial counsel testified that, among other things, he told Urbano that deportation or other adverse immigration consequences were likely if he pleaded guilty to a felony such as third-degree criminal sexual conduct. Counsel testified that, "where there are areas where [he didn't] feel particularly competent in [he] always recommend[s] to the client as [he] did in this case that they seek independent counsel specializing in that area." He further testified that, "prior to or during the [December 1, 2014 plea] hearing and in

6

prior conference with [Urbano] again as I indicated moments ago suggested independent counsel because of potential immigration issues. . . . I would always do that, and I did very specifically where there's felonies involved." Counsel never asked Urbano if he actually contacted an immigration attorney.

In regard to his off-the-record advice to Urbano before the December 1 and 11 plea hearings, counsel testified that

> I would have told [Urbano] that any time one pleads guilty to any type of felony I would expect that there would be some [immigration] consequences. I wasn't going to say with a hundred percent certainty that there would be a deportation or things of that nature, but that certainly that there would be immigration authorities looking at this, and that there was a strong likelihood that there would be those types of consequences.

Counsel also testified that, prior to Urbano's guilty plea to fleeing a peace officer in a motor vehicle, he "would have talked about [potential immigration consequences] particularly because it was a second felony offense that would in [his] opinion aggravate the situation with immigration and cause [Urbano] even potentially more difficulties in that respect."

Following the evidentiary hearing, the district court issued a detailed, 21-page order, summarizing the testimony and analyzing Urbano's legal arguments. The court found that Urbano's trial counsel "did not tell [Urbano] that he definitely would be deported," and that Urbano "was fully aware that deportation was a possible and likely consequence of his guilty pleas." The court found that Urbano's pleas were voluntary, intelligent, and accurate. The court concluded that "the immigration consequences of [Urbano]'s pleas were not truly

7

clear, and [counsel]'s counsel that deportation was possible and likely fulfilled his duty under *Padilla*."

On appeal, Urbano argues that the district court erred by determining that the deportation consequences of his convictions were not "truly clear" and that he was not deprived of the effective assistance of counsel at his plea hearings, and by finding that his guilty pleas were valid because they were voluntary, intelligent, and accurate. "[Appellate courts] review a district court's decision to deny a motion to withdraw a guilty plea under Minn. R. Civ. P. 15.05, subd. 1, for an abuse of discretion." *Campos v. State*, 816 N.W.2d 480, 485 (Minn. 2012). "A postconviction court abuses its discretion when it has exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings." *Griffin v. State*, 883 N.W.2d 282, 284 (Minn. 2016) (quotations omitted). "[Appellate courts] review a postconviction court's factual determinations under a clearly erroneous standard, and do not reverse those determinations unless they are not factually supported by the record." *Nelson v. State*, 880 N.W.2d 852, 857–58 (Minn. 2016) (quotation omitted). "[A]ssessing the validity of a plea presents a question of law that [appellate courts] review de novo." *Id.* at 858 (quotation omitted).

After sentencing, a defendant is entitled to withdraw a guilty plea only "to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is not valid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). A valid plea is one that is "accurate, voluntary, and intelligent." *Id.* Defendants wishing to withdraw a guilty plea have the burden to prove that the plea was invalid. *Id.*

8

*Effectiveness of counsel's assistance*

Urbano argues that the deportation consequences of his guilty pleas were "truly clear," that counsel had a duty to accurately inform him of the consequences, and that counsel did not assist him effectively during the plea process because counsel did not give him "correct advice." Urbano contends that his counsel's ineffectiveness rendered his guilty pleas invalid because they were not voluntary and intelligent.[3]

"Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 364, 130 S. Ct. 1473, 1480–81 (2010) (quotation omitted). "Ineffective assistance of counsel renders a guilty plea involuntary and unintelligent." *Sanchez v. State*, 868 N.W.2d 282, 286 (Minn. App. 2015), *review granted* (Minn. Oct. 28, 2015); *Butala v. State*, 664 N.W.2d 333, 341 (Minn. 2003). We analyze ineffective-assistance-of-counsel claims under the two-prong test explained in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). First, the defendant must show that "the attorney's performance fell below an objective standard of reasonableness." *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014). The defendant has the burden of proof, and there is a strong presumption that counsel's performance fell within a wide range of reasonable assistance. *Gail v. State*, 732 N.W.2d

---

[3] In a point heading in his brief, Urbano also argues that his guilty plea was not accurate, but he does not develop the argument or provide citation to the controlling law or the record to support his argument. The district court found that Urbano forfeited his accuracy challenge because he did not argue it at the evidentiary hearing, but the court nevertheless addressed the challenge and concluded that, even if not forfeited, Urbano's pleas were accurate because they were supported by adequate factual bases and counsel's use of leading questions did not invalidate the pleas.

9

243, 248 (Minn. 2007). Second, the defendant must prove that "a reasonable probability exists that, but for the attorney's unprofessional error, the outcome would have been different." *Vang*, 847 N.W.2d at 266. "We need not address both the performance and prejudice prongs if one is dispositive." *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013). "[A]pplication of the *Strickland* test involves a mixed question of law and fact, [so the] standard of review is de novo." *Griffin*, 883 N.W.2d at 287.

Urbano argues that his counsel's assistance fell below the objective standard of reasonableness explained in *Padilla*. 559 U.S. at 366, 130 S. Ct. at 1482. In *Padilla*, the Supreme Court held that the Sixth Amendment requires attorneys to inform their noncitizen clients about whether their plea carries a risk of deportation. *Id.* at 374, 130 S. Ct. at 1486. "When the law is not succinct and straightforward" counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369, 130 S. Ct. at 1483. "The nature of the advice required varies depending on the immigration statute applicable to the guilty plea in question." *Sanchez*, 868 N.W.2d at 287. "But when the deportation consequences of a plea are 'truly clear' and counsel can 'easily determine' those consequences 'simply from reading the text of the statute,' the duty to give more robust advice about the likelihood of deportation is 'equally clear.'" *Id.* (quoting *Padilla*, 559 U.S. at 368–69, 130 S. Ct. at 1483).

### Criminal sexual conduct in the third degree

Urbano argues that counsel could have determined easily that his plea to third-degree criminal sexual conduct under Minn. Stat. § 609.344, subd. 1(b) (2014), would lead to him being deported because the offense is a statutory match to the aggravated felony,

10

sexual abuse of a minor, which is a deportable conviction under the Immigration and Nationality Act (INA). Urbano contends that *Padilla* required his counsel to advise him that he faced certain deportation by pleading guilty and counsel failed to provide a sufficient warning. We disagree. "[T]he INA does not define sexual abuse of a minor," and, like Sanchez, Urbano "cites no case by a court binding this one that has determined that the conduct proscribed by Minn. Stat. § 609.344, subd. 1(b), is sexual abuse of a minor." *Sanchez,* 868 N.W.2d at 288 (quotations omitted). Counsel therefore could not "have simply examined the relevant statute or analyzed binding caselaw to determine that [Urbano's] conviction was an aggravated felony." *Id.*

Urbano also argues that counsel's representation fell below the objective standard of reasonableness because counsel did not undertake an adequate investigation by reading Board of Immigration Appeals cases and applying them to Urbano's situation. As in *Sanchez,* we reject this argument because it requires "an extension of *Padilla.*" *Id.* "*Padilla* directs courts to examine the clarity of immigration consequences by examining whether the *statute* governing the immigration consequences is 'truly clear.'" *Id.* (quoting *Padilla,* 559 U.S. at 369, 130 S. Ct. at 1483). "[N]othing in *Padilla* . . . suggest[s] that the Supreme Court would consider the immigration consequences of a plea 'truly clear' if counsel must analyze cases" from the Board of Immigration Appeals "interpret[ing] . . . *ambiguous* statutes" and compare them with Minnesota criminal statutes. *Id.*

In this case, like in *Sanchez,* "the law is not succinct and straightforward" so "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 288–89

11

(quotations omitted). The record of the plea hearing and the plea petition amply reflect that counsel told Urbano that he might be deported for pleading guilty to third-degree criminal sexual conduct. Counsel's representation was not objectively unreasonable and Urbano's ineffective-assistance-of-counsel claim as to his guilty plea to third-degree criminal sexual conduct therefore fails.

### *Fleeing a peace officer in a motor vehicle*

Urbano argues that counsel's representation fell below the objective standard of reasonableness as to his plea to fleeing a peace officer in a motor vehicle under Minn. Stat. § 609.487, subd. 3 (2014), because the immigration consequences of his plea were "truly clear." He contends that, from a simple reading of the statute, counsel could have determined that fleeing a peace officer in a motor vehicle is an aggravated felony requiring automatic deportation. We disagree.

Fleeing a peace officer in a motor vehicle is not listed under the definition of a crime of violence that falls within the definition of an aggravated felony.[4] Urbano relies on federal cases that define felony vehicle flight as a violent felony under the Armed Career Criminal Act (ACCA) but cites no binding caselaw that defines fleeing a peace officer in a motor

---

[4] *See* 8 U.S.C. § 1101(a)(43)(F) (2012) (stating that an aggravated felony is, "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment at least one year"); *see also* 18 U.S.C. § 16 (2012) (defining "The term 'crime of violence' [as]−
(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.").

vehicle as a crime of violence under the INA.[5] Fleeing a peace officer in a motor vehicle is not listed as a crime of violence under 18 U.S.C. § 16. And Urbano cites no controlling caselaw in which a court has determined that the conduct proscribed by Minn. Stat. § 609.487, subd. 3, is a crime of violence. Counsel therefore could not have simply examined the relevant statute or analyzed binding caselaw to determine that Urbano's conviction was a crime of violence.

Urbano also argues that the district court erred by denying his motion to withdraw his guilty plea to fleeing a peace officer in a motor vehicle on the basis of the holding in *Johnson* because it was decided after Urbano entered his plea. We disagree. Although the court mentioned *Johnson* in response to cases cited by Urbano, it explained that it rejected Urbano's motion to withdraw his guilty pleas because the immigration consequences of his plea were not truly clear. The record does not reflect that the court relied on the holding in *Johnson* as a basis for denying Urbano's motion to withdraw his guilty plea. Urbano cites federal cases from other circuits that have linked felony vehicle flight under the residual clause of the ACCA with the INA's residual clause following *Johnson*.[6] But these cases

---

[5] *See Sykes v. United States*, 564 U.S. 1, 16, 131 S. Ct. 2267, 2277 (2011), *overruled by Johnson v. United States*, 135 S. Ct. 2551 (2015) (holding that, "Felony vehicle flight is a violent felony for purposes of ACCA."); *United States v. Bartel*, 698 F.3d 658, 662 (8th Cir. 2012) (relying on the Supreme Court's holding in *Sykes* to hold that, "a violation of Minnesota Statute § 609.487, subd. 3 presents a serious potential risk of physical injury to another and is therefore a violent felony under the ACCA." (quotations omitted)). *But see Johnson*, 135 S. Ct. at 2563 (overruling *Sykes* and holding that, "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process.").

[6] *See United States v. Gonzalez-Longoria*, 831 F.3d 670, 677 (5th Cir. 2016) (holding that, "[T]he concerns raised by the Court in *Johnson* with respect to Armed Career Criminal

13

are not binding on this court, were decided after Urbano entered his plea, and are not relevant to the determination of whether the law was succinct and straightforward, i.e., truly clear, when Urbano entered his plea.

Urbano also argues that counsel's representation was unreasonable because counsel did not perform basic research on the immigration consequences of Urbano's guilty plea to fleeing a peace officer in a motor vehicle. We disagree. The reasoning in *Sanchez* is applicable here because, as stated above, "*Padilla* directs courts to examine the clarity of immigration consequences by examining whether the *statute* governing the immigration consequences is 'truly clear.'" *Id.* (citing *Padilla*, 559 U.S. at 369, 130 S. Ct. at 1483). Nothing in *Padilla* suggests that the Supreme Court would consider the immigration consequences of a plea truly clear if counsel must be familiar enough with the similarities between federal statutes to apply holdings by analogy and compare them with Minnesota criminal statutes. *See id.*

---

Act's residual clause do not cause the same problems in the context of 18 U.S.C. § 16(b). . . . Thus, we hold that 18 U.S.C. § 16(b) is not unconstitutionally vague on its face."); *United States v. Hill*, 832 F.3d 135, 150 (2d Cir. 2016) (holding that 18 U.S.C. § 16(b) is not unconstitutionally vague in light of *Johnson*'s holding); *Shuti v. Lynch*, 828 F.3d 440, 441 (6th Cir. 2016) (considered the connection between the two statutes in light of *Johnson*'s holding and concluded that, "the wide-ranging inquiry required by these two statutory phrases are one and the same, and therefore hold that the immigration code's residual clause is likewise unconstitutionally vague."); *Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015) (holding that 18 U.S.C. § 16(b) is unconstitutionally vague in light of *Johnson*'s reasoning), *cert. granted*, ___ U.S. ___, ___ S. Ct. ___, ___ L.Ed.2d ___, 2016 WL 3232911 (Sept. 29, 2016) (No. 15-1498); *United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015) (holding that, "Applying *Johnson's* reasoning here, we conclude that § 16(b) is unconstitutionally vague.").

"When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369, 130 S. Ct. at 1483. We conclude that the law "is not succinct and straightforward" so "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Sanchez*, 868 N.W.2d at 288–89 (quotations omitted). The record of the plea hearing and the plea petition amply reflect that counsel told Urbano that he might be deported for pleading guilty to a second felony— fleeing a peace officer in a motor vehicle, especially because it was a second felony conviction. We therefore conclude that counsel's representation was not objectively unreasonable and that the district court did not err by denying his ineffective-assistance-of-counsel claim as to his plea to fleeing a peace officer in a motor vehicle.

Because Urbano has failed to meet his burden of proving prong one of the *Strickland* analysis, this court need not address prong two—prejudice. *See Andersen*, 830 N.W.2d at 10 (stating that a court "need not address both the performance and prejudice prongs if one is dispositive"). The district court did not err by concluding that Urbano's guilty pleas were voluntary, intelligent, accurate, and valid.

**Affirmed**.

15