*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0574**

Denis Alcivar Alvarado-Riera, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed January 9, 2017
Affirmed
Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-14-17543

David L. Wilson, Anne Carlson, Wilson Law Group, Minneapolis, Minnesota (for
appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Cheri A. Townsend, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

        Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and

Muehlberg, Judge.[*]

---

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals
by appointment pursuant to Minn. Const. art. VI, § 10.

**SCHELLHAS**, Judge

Appellant challenges the district court's denial of his postconviction petition to withdraw his guilty plea without an evidentiary hearing. We affirm.

## FACTS

Appellant Denis Alvarado-Riera was admitted to the United States as a lawful permanent resident in 1998. In April 2014, ICE agents apprehended Alvarado-Riera on a removal order because Alvarado-Riera had been convicted of domestic assault, but an immigration judge canceled the removal order on June 11, 2014. On June 10, respondent State of Minnesota charged Alvarado-Riera by complaint with check forgery committed on or about November 8, 2013, under Minnesota Statutes section 609.631, subdivision 2(1) (2012).

On June 23, 2014, Alvarado-Riera voluntarily admitted himself to Abbot Northwestern Hospital for anxiety, depression, and suicidal thoughts. He spent three days in the hospital, was treated with medication, and was discharged with a treatment plan. On November 24, Alvarado-Riera pleaded guilty to felony check forgery. In connection with his plea, he offered to the district court a plea petition in which he represented that he had been a patient in a mental hospital and had talked with, or been treated by, a psychiatrist for a nervous or mental-health condition. "Depression" is handwritten next to that disclosure. Alvarado-Riera also represented that he had not been ill recently but was taking pills or other medicine at the time of his plea. "Wellbutrin" is handwritten next to that representation. And the plea petition contains the following language:

2

I understand that pursuant to federal law that if I am not a citizen of the United States, this guilty plea may result in my removal from the United States and/or stop me from being able to legally enter or re-enter the United States; that the immigration consequences to me, if any, are not necessarily the same as they would be to anyone else; and that if I am not a citizen, I have the right to seek individualized advice from an attorney about the effect your guilty plea will have on your immigration status.

At the plea hearing on November 24, 2014, Alvarado-Riera's counsel questioned him about his mental illness and medication as follows:

DEFENSE COUNSEL: Now, we had some discussions about how you have been previously diagnosed with some mental illness, is that correct?
THE DEFENDANT: Yes.
DEFENSE COUNSEL: And you have been hospitalized for that in the past, is that correct?
THE DEFENDANT: Yes.
DEFENSE COUNSEL: You are currently under medication, is that correct?
THE DEFENDANT: Yes.
DEFENSE COUNEL: Now, is that in any way, shape or form affecting your understanding of your rights, the trial and the evidence or anything like that?
THE DEFENDANT: No.
DEFENSE COUNSEL: So you understand what's going on here?
THE DEFENDANT: Yes.

And the prosecutor engaged in the following colloquy with Alvarado-Riera:

THE PROSECUTOR: Sir, it is not my intention to intrude in any conversations that you and your counsel have had, but do you understand – and you may recall that the petition you filled out talks about that there could be – if you are not a citizen of the United States, there could be immigration consequences to the act of pleading guilty today.
THE DEFENDANT: Yes.

3

THE PROSECUTOR: Do you understand that?

THE DEFENDANT: Yes.

THE PROSECUTOR: And you understand that this may well be a triggering event for Homeland Security or ICE to have a look at your immigration status, and you have talked to your attorney and feel fully informed about that?

THE DEFENDANT: Yes.

THE PROSECUTOR: You have gone over that and – I am not prying as to what the advice was, but you know and understand and have talked about those risks?

THE DEFENDANT: Yes.

THE PROSECUTOR: That this, you know, could trigger deportation proceedings?

THE DEFENDANT: Yes. I am actually already in the process for a domestic.

THE PROSECUTOR: Okay.

THE DEFENDANT: So I understand.

THE PROSECUTOR: You understand the risk –

THE DEFENDANT: Yes.

THE PROSECUTOR: – by – that you are taking today?

THE DEFENDANT: Yes.

Alvarado-Riera stated to the district court, "I just don't want to lose my right being here and losing my family, you know." The court accepted Alvarado-Riera's guilty plea to felony check forgery, stayed imposition of sentence, credited Alvarado-Riera for 24 days served, and placed him on supervised probation for two years.

On December 8, 2015, the United States Department of Homeland Security arrested Alvarado-Riera because he had been convicted of two crimes (domestic assault and felony check forgery) involving moral turpitude that did not arise out of a single scheme of criminal conduct. On January 7, 2016, Alvarado-Riera petitioned the district court to withdraw his guilty plea, claiming that his plea was involuntary and unintelligent due to his mental illness and that his counsel was ineffective for failing to

4

advise him that he definitely would be deported for a guilty plea to felony check forgery. The district court denied the postconviction petition without an evidentiary hearing.

This appeal follows.

## D E C I S I O N

### *Denial of evidentiary hearing*

Alvarado-Riera argues that the district court erred by denying his request for an evidentiary hearing on his postconviction petition. The court concluded that resolution of the claims in Alvarado-Riera's postconviction petition did not require an evidentiary hearing. The court reasoned that Alvarado-Riera made no claim of newly discovered evidence and that the parties relied on the same set of facts contained in the plea-hearing transcript and did not dispute the material facts.

Appellate courts review a denial of a request for an evidentiary hearing for an abuse of discretion. *Morrow v. State*, 886 N.W.2d 204, 206 (Minn. 2016). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012) (quotation omitted); *see also Colbert v. State*, 870 N.W2d 616, 621 (Minn. 2015). "[Appellate courts] review the postconviction court's underlying factual findings for clear error and its legal conclusions de novo." *Morrow*, 886 N.W.2d at 206.

"A postconviction court may deny a petition for postconviction relief without holding an evidentiary hearing if the petition, files, and records in the proceeding conclusively establish that the petitioner is not entitled to relief." *Id.* (citing Minn. Stat. § 590.04, subd. 1 (2014)). "[T]he postconviction court must grant [an] evidentiary hearing

5

whenever material facts are in dispute." *State v. Vang*, 881 N.W.2d 551, 557 (Minn. 2016) (quotation omitted). "But the postconviction court need not hold an evidentiary hearing when the petitioner alleges facts that, if true, are legally insufficient to entitle him to the requested relief." *Id.* (quotation omitted). "Any doubts about whether to conduct an evidentiary hearing should be resolved in favor of the defendant seeking relief." *State v. Nicks*, 831 N.W.2d 493, 504 (Minn. 2013).

***Claim of ineffective assistance of trial counsel***

Alvarado-Riera argues that his trial counsel's performance fell below the objective standard of reasonableness, as explained in *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010), and that the district court erred by resolving his ineffective-assistance-of-trial-counsel claim without first conducting an evidentiary hearing. In *Padilla*, the Supreme Court held that the Sixth Amendment requires attorneys to tell their noncitizen clients if their pleas carry a risk of deportation. *Padilla*, 559 U.S. at 374, 130 S. Ct. at 1486. "An ineffective assistance of counsel claim is an alleged violation of the right to reasonably effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution." *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003). "Ineffective assistance of counsel renders a guilty plea involuntary and unintelligent." *Sanchez v. State*, 868 N.W.2d 282, 286 (Minn. App. 2015), *review granted* (Minn. Oct. 28, 2015).

An evidentiary hearing is required on an ineffective-assistance-of-counsel claim when, "a defendant . . . allege[s] facts that, if proven by a fair preponderance of the evidence, . . . satisfy the two requirements from *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984)." *Morrow*, 886 N.W.2d at 206. First, petitioner must show that

"counsel's representation fell below an objective standard of reasonableness." *Vang*, 881 N.W.2d at 557 (quotation omitted). Second, petitioner must prove that "there [is] a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (quotation omitted). "[This court] need not address both prongs . . . if one is determinative." *Id.* (quotation omitted). A petitioner "has the burden of proof" to overcome the "strong presumption that counsel's performance fell within a wide range of reasonable assistance." *Gail v. State*, 732 N.W.2d 243, 248 (Minn. 2007). "The objective standard of reasonableness is defined as representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Vang*, 847 N.W.2d 248, 266–67 (Minn. 2014) (quotations omitted). "[A]pplication of the *Strickland* test involves a mixed question of law and fact, [so the] standard of review is de novo." *Griffin v. State*, 883 N.W.2d 282, 287 (Minn. 2016).

"The nature of the advice required varies depending on the immigration statute applicable to the guilty plea in question." *Sanchez*, 868 N.W.2d at 287. "When the law is not succinct and straightforward" counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369, 130 S. Ct. at 1483. "But when the deportation consequences of a plea are truly clear and counsel can easily determine those consequences simply from reading the text of the statute, the duty to give more robust advice about the likelihood of deportation is equally clear." *Sanchez*, 868 N.W.2d at 287 (quoting *Padilla*, 559 U.S. at 369, 130 S. Ct. at 1483) (quotation marks omitted).

7

Alvarado-Riera argues that the district court erred in determining that the immigration consequences of his plea were unclear because competent counsel could have easily determined that felony check forgery was a crime involving moral turpitude (CIMT), which is a deportable offense under immigration law, by conducting "a basic word matching level of analysis." We disagree. Under the Immigration and Nationality Act (INA), any alien who "is convicted of a crime involving moral turpitude . . . for which a sentence of one year or longer may be imposed, is deportable." 8 U.S.C. § 1227(a)(2)(A)(i)(I), (II) (2012).[1] Multiple convictions for crimes involving moral turpitude also render an alien deportable. *Id.* at (a)(2)(A)(ii) ("Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable."). But, the Eighth Circuit has recently confirmed that "[t]he phrase 'crime involving moral turpitude' is not defined by statute and thus the meaning of the phrase was left to future administrative and judicial interpretation." *Miranda-Romero v. Lynch*, 797 F.3d 524, 525 (8th Cir. 2015) (quotation omitted).

Alvarado-Riera argues that *Sanchez*, relied on by the district court, is inapplicable here because, unlike in *Sanchez*, the immigration consequences of a conviction for felony check forgery are evident from the terms of the immigration statute. *See* 868 N.W.2d at 287. The district court applied this court's holding in *Sanchez* and concluded that the

---

[1] *Black's Law Dictionary* defines "moral turpitude" as, "Conduct that is contrary to justice, honesty, or morality." *Black's Law Dictionary* 1163 (10th ed. 2014).

immigration consequences of a plea to felony check forgery were not truly clear because "Check forgery is not defined as a CIMT in the statute." *See id.* at 288. We agree.

In *Sanchez,* this court held that the immigration consequences of a plea to third-degree criminal sexual conduct under Minn. Stat. § 609.344, subd. 1(b), were not truly clear because the INA does not define the aggravated felony of sexual abuse of a minor. *Id.* The court explained that the immigration consequences were not clear because, "counsel could not have simply examined the relevant statute . . . to determine that Herrera Sanchez's conviction was an aggravated felony." *Id.* So too here. We conclude that the district court correctly applied *Sanchez* because, like in *Sanchez*, counsel could not have easily determined that felony check forgery was a CIMT from simply reading the statute when the INA does not define crimes involving moral turpitude. The district court therefore did not abuse its discretion in holding that the immigration consequences of Alvarado-Riera's plea were not truly clear because it is not truly clear from a reading of the statute that felony check forgery is a CIMT.

Alvarado-Riera also relies on federal cases and Board of Immigration Appeals cases to argue that the immigration consequences of his plea were truly clear because caselaw has clearly established that forgery is always a CIMT. We are not persuaded. In *Jordan v. De George* the Supreme Court held that conspiring to defraud the United States is a CIMT. 341 U.S. 223, 229, 71 S. Ct. 703, 706 (1951). In reviewing past decisions, the Court explained that, "[F]raud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude." *Id.* The Court went on to explain that, "In every deportation

9

case where fraud has been proved, federal courts have held that the crime in issue involved moral turpitude. This has been true in a variety of situations involving fraudulent conduct [including] . . . forgery with intent to defraud." *Id.* at 227–28, 71 S. Ct. at 706. Under Eighth Circuit caselaw, "Crimes that have a specific intent to defraud as an element have always been found to involve moral turpitude." *Miranda-Romero*, 797 F.3d at 525 (quotation omitted); *see also Lateef v. Dep't of Homeland Sec.*, 592 F.3d 926, 929, 931 (8th Cir. 2010) (holding that "[t]he BIA's conclusion that his conviction [for using an unlawfully obtained social security number] involved moral turpitude is reasonable because § 408(a)(7)(A) requires proof of a defendant's intent to deceive and its interpretation of the ambiguous statutory phrase 'crime involving moral turpitude' is therefore due deference").

Alvarado-Riera cites no case defining felony check forgery under Minn. Stat. § 609.631 (2012) as a CIMT.[2] But felony check forgery seems to be a CIMT under both Supreme Court and Eighth Circuit caselaw because felony check forgery under Minnesota law requires a specific intent to defraud. *See* Minn. Stat. § 609.631. This court explained in *Sanchez* that the immigration consequences of a guilty plea are not truly clear "if counsel must analyze cases from other circuits that in turn analyze agency interpretations of *ambiguous* statutes." 868 N.W.2d at 288. In this case, unlike in *Sanchez*, cases from both the United States Supreme Court and the Eighth Circuit are on point, so this is a closer

---

[2] Alvarado-Riera cites a number of Board of Immigration Appeals cases, including *In re Islam*, as binding authority for the propositions that forgery is a CIMT. 25 I. & N. Dec. 637, 638 (BIA 2011) (stating that, "Forgery and possession of stolen property have long been considered to be crimes involving moral turpitude. . . .").

question. But in *Sanchez* the court does not hold that the immigration consequences of a guilty plea would be truly clear if a caselaw precedent from the Eighth Circuit or the Supreme Court existed, and *Padilla* is silent on whether the immigration consequences of a guilty plea would be truly clear in such a situation. *See Padilla*, 559 U.S. at 369, 130 S. Ct. at 1483 (reasoning that, "The consequences of Padilla's plea could easily be determined from reading the removal statute."). We conclude that the immigration consequences of a guilty plea to felony check forgery are not truly clear under *Sanchez* and *Padilla,* therefore Alvarado-Riera's argument that basic research would have made it truly clear that felony check forgery is a CIMT fails.

On appeal, Alvarado-Riera also argues that the immigration consequences of his plea were truly clear because counsel could easily have determined that felony check forgery is an aggravated felony, which is a deportable offense. He did not make this argument to the district court. "[Appellate] court[s] generally will not decide issues which were not raised before the district court, including constitutional questions of criminal procedure." *Roby v. State*, 547 N.W.2d 354, 357 (1996). Because Alvarado-Riera did not present this issue to the district court, we decline to consider it.

Because the immigration consequences of Alvarado-Riera's guilty plea to felony check forgery were not truly clear, *Padilla* required only that counsel tell Alvarado-Riera that his plea carried a risk of adverse immigration consequences. *See Padilla*, 559 U.S. at 369, 130 S. Ct. at 1483 (stating that, "When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences."). Because

11

Alvarado-Riera received the warning in writing and orally that his guilty plea to felony check forgery carried a risk of removal from the United States and that deportation proceedings may be initiated against him as a result of his guilty plea, counsel's performance was reasonable because counsel performed the customary skills and diligence that a reasonably competent attorney would perform under the circumstances. The district court did not abuse its discretion by denying Alvarado-Riera postconviction relief on the basis that Alvarado-Riera was properly counseled about the immigration consequences of his guilty plea before entering it.

Alvarado-Riera also argues that if the district court had afforded him an evidentiary hearing on his postconviction petition, he would have subpoenaed a specific immigration attorney employed by the Hennepin County Public Defender's Office to testify. This attorney's "role is to counsel non-citizen defendants regarding immigration consequences at the request of public defenders." In this case, the attorney never consulted with Alvarado-Riera's trial counsel, never met with or advised Alvarado-Riera, and was expected to so testify. Alvarado-Riera nevertheless argues that the court erred by denying him an opportunity to call the immigration attorney to testify, asserting in a footnote that "[i]f the professional norm at the Hennepin County Public Defender's Office is to consult with [the immigration attorney] during the course of representing a non-citizen, and [trial counsel] failed to do that, this is directly relevant to the question of whether he provided effective assistance." The court determined that the attorney's testimony was not relevant—that "even in the best light, the evidence would not produce a different or more favorable result." The court also concluded that the information regarding the immigration

attorney does not satisfy the four-part test for newly discovered evidence under *Wieland v. State*, 457 N.W.2d 712, 714 (Minn. 1990), because the information regarding the attorney "could have been discovered because [Alvarado-Riera's] trial counsel was contracted through the same office as the proposed witness."

Moreover, noting that Alvarado-Riera "only argued that [his trial counsel] did not provide sufficient counsel," the district court concluded that a "[v]iolation of an office protocol would not be evidence of a constitutional violation." We agree that the immigration attorney's testimony in this case is irrelevant and that any violation by trial counsel of the office protocol in the Hennepin County Public Defender's Office is not evidence of a constitutional violation.

### *Denial of request to withdraw plea*

A defendant does not have an "absolute right to withdraw a guilty plea after entering it." *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010). After sentencing, a defendant may withdraw a guilty plea only "to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is not valid." *Sanchez*, 868 N.W.2d at 286 (quotation omitted). "To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent." *Nelson v. State*, 880 N.W.2d 852, 858 (Minn. 2016) (quotation omitted). A petitioner "bears the burden of showing his plea was invalid." *Raleigh*, 778 N.W.2d at 94. "Assessing the validity of a plea presents a question of law that [this court] review[s] de novo." *Nelson*, 880 N.W.2d at 858 (quoting *Raleigh*, 778 N.W.2d at 94).

Alvarado-Riera alleged in his postconviction petition that his plea was not intelligent or voluntary because he was mentally incompetent at the time of the hearing.

13

"A defendant has a due process right not to be tried or convicted of a criminal charge if he or she is legally incompetent." *Bonga v. State*, 797 N.W.2d 712, 718 (Minn. 2011). "A defendant is incompetent and must not plead . . . if the defendant lacks ability to: (a) rationally consult with counsel; or (b) understand the proceedings or participate in the defense due to mental illness or deficiency." Minn. R. Crim. P. 20.01, subd. 2. Alvarado-Riera argued to the district court that his history of mental illness was obvious because he was accepted in Hennepin County Criminal Mental Health Court and that a Rule 20.01 evaluation should have been administered. "The prosecutor, defense attorney, and the court share the duty to protect the right of a defendant not to be tried or convicted while incompetent." *Bonga*, 797 N.W.2d at 718 (citing Minn. R. Crim. P. 20.01, subd. 2). "If the court finds there is reason to doubt a defendant's competency, it must suspend the criminal proceedings. *Martin v. State*, 825 N.W.2d 734, 745 (Minn. 2013) (citing Minn. R. Crim. P. 20.01, subd. 3). "In considering whether there is reason to doubt a defendant's competency, the court should consider factors such as evidence of the defendant's irrational behavior, demeanor at trial, and any prior medical opinion on competence to stand trial." *Id.* (quotation omitted).

Here, citing Minn. R. Crim. P. 20.01, subd. 2, the district court noted that having a mental illness does not automatically render a defendant incompetent and that Alvarado-Riera did not offer "any new information that he was not competent at the time of the plea

petition," and concluded that Alvarado-Riera had not produced evidence that he did not make an accurate, voluntary, and intelligent plea. We agree.

Because the record conclusively establishes that Alvarado-Riera is not entitled to relief, the district court did not abuse its discretion by denying Alvarado-Riera's postconviction petition without an evidentiary hearing.

**Affirmed.**